Michael KRAUSE, Plaintiff–Appellee,

v.

D.R. PENNY, Edward M. Rooney, the County of Saratoga and the Sheriff's Department of the County of Saratoga, Defendants,

D.R. Penny, Defendant–Appellant.

Docket No. 87–7256.

United States Court of Appeals, Second Circuit.

Argued Sept. 30, 1987.

Decided Jan. 26, 1988.

---

Michael S. Buskus, Asst. Atty. Gen., Albany, N.Y. (Robert Abrams, Atty. Gen., Peter H. Schiff, Deputy Sol. Gen., and Peter J. Dooley, Asst. Atty. Gen., Albany, N.Y., of counsel), for defendant-appellant.

Donald J. Shanley, Troy, N.Y. (Shanley & Shanley, Troy, N.Y., of counsel), for plaintiff-appellee.

Before VAN GRAAFEILAND, MESKILL and NEWMAN, Circuit Judges.

VAN GRAAFEILAND, Circuit Judge:

D.R. Penny appeals from a $25,000 judgment of the United States District Court for the Northern District of New York which followed a jury trial before Judge Gagliardi. The judgment, in favor of Michael Krause, was based on Penny's alleged violation of Krause's Fourth Amendment rights. 42 U.S.C. § 1983. The jury awarded Krause $150,000, but the award was reduced by remittitur to $25,000. For the reasons that follow, we reverse and remand with instructions to dismiss the complaint.

On May 15, 1982, Penny, a New York State Trooper, responded to a call to investigate possible criminal mischief on Vosburg Road in the Town of Halfmoon, New York. Susan and Anthony Connaway claimed that Krause, their neighbor, had committed various unlawful acts, including setting a fire near their wooden fence and screaming obscene epithets at them. After listening to their complaints, Penny proceeded to Krause's residence to hear his version of the facts.

Krause met Penny in his driveway and invited him into the house to discuss the matter. Upon learning that his neighbors had accused him of harassment, Krause went to an open window and yelled a number of obscenities at the Connaways. At about this time, Deputy Sheriff Edward Rooney, summoned by a second call from the Connaways, entered Krause's house to make sure everything was under control.

After further discussion with Krause, Penny returned to the Connaways' residence to see if they wanted to make a formal complaint. They executed a complaint alleging harassment, and Penny then returned to Krause's property to arrest him. As Penny approached Krause's residence, Krause and Rooney were standing in the driveway near Krause's garage, which was attached to the house. Joining Krause and Rooney, Penny announced that he was going to arrest Krause; Krause responded, "Wait a minute," and took a couple of steps back. Penny and Rooney then took Krause by the arms, and a struggle ensued. Krause sustained several minor injuries before he was subdued and taken to the nearest State Police substation.

Krause subsequently sued both Penny and Rooney, alleging numerous state and federal claims. However, most of them were rejected by either the court or the jury. Krause's success on the only claim not rejected by the court or the jury resulted from the following charge by the district court:

I instruct you now as a matter of law that under the Constitution of the United States, the arrest of the plaintiff under the circumstances existing here by Trooper Penny was illegal and a violation of his Fourth Amendment rights. Under the law, the arrest of a person at his home or so near, as everybody can see that the arrest took place here, is illegal under the Constitution of the United States, as I've said, without the obtaining of a warrant.

We hold that there was such a substantial question concerning the alleged illegality of Krause's arrest that Trooper Penny was entitled as a matter of law to a good-faith qualified immunity from liability, a defense that was pleaded and urged repeatedly before, during and after the trial.

Although the Supreme Court held in *Payton v. New York*, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980), that the Fourth Amendment "prohibits the police from making a warrantless and nonconsensual entry into a suspect's home in order to make a routine felony arrest," *id.* at 576, 100 S.Ct. at 1375, it has not yet delineated

"the degree of Fourth Amendment protection afforded the curtilage, as opposed to the home itself," *Oliver v. United States,* 466 U.S. 170, 180 n. 11, 104 S.Ct. 1735, 1742 n. 11, 80 L.Ed.2d 214 (1984). However, there is substantial lower court authority for the proposition that areas such as driveways that are readily accessible to visitors are not entitled to the same degree of Fourth Amendment protection as are the interiors of defendants' houses. *See, e.g., United States v. Reed,* 733 F.2d 492, 501 (8th Cir.1984); *United States v. Ventling,* 678 F.2d 63, 65–66 (8th Cir.1982); *United States v. Magana,* 512 F.2d 1169, 1170–71 (9th Cir.), *cert. denied,* 423 U.S. 826, 96 S.Ct. 42, 46 L.Ed.2d 43 (1975); *see also State v. Pike,* 143 Vt. 283, 287–88, 465 A.2d 1348 (1983) (quoting *State v. Corbett,* 15 Or.App. 470, 475, 516 P.2d 487 (1973)). Viewing Penny's conduct objectively, as we are required to do, we are satisfied that it did not violate Krause's rights under clearly established law and that this entitled Penny to avoid liability on the basis of qualified immunity. *Harlow v. Fitzgerald,* 457 U.S. 800, 817–19, 102 S.Ct. 2727, 2737–39, 73 L.Ed.2d 396 (1982); *O'Hagan v. Soto,* 725 F.2d 878, 879 (2d Cir.1984).

An additional factor which militates against liability in the instant case is the strong likelihood that a reasonable person in Penny's position would believe that he had at least implied consent from Krause to be on his property at the time of the arrest. Consent can be found from an individual's words, acts or conduct. *United States v. Buettner–Janusch,* 646 F.2d 759, 764 (2d Cir.), *cert. denied,* 454 U.S. 830, 102 S.Ct. 126, 70 L.Ed.2d 107 (1981). There can be no dispute that Krause expressly and voluntarily consented to Penny's initial presence in Krause's home. Krause greeted Penny in his front yard, introduced himself, suggested they call each other by their first names, and "invited [Penny] in[to the house] to see what the problem was." When Penny left Krause's residence, he did so under circumstances clearly indicating that he would return. Rooney remained with Krause during Penny's brief absence. When Penny returned, Krause, who was standing in the driveway with Rooney, did not voice any objection to Penny's reentry onto his property.

Under the doctrine of qualified immunity, we need only determine the "objective legal reasonableness" of Penny's actions. *Anderson v. Creighton,* —— U.S. ——, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987). Public officials will not be held liable for discretionary actions that "could reasonably have been thought consistent with the rights they are alleged to have violated." *Id.* We are satisfied that a reasonable officer in Penny's position might well have believed that Krause consented to his presence in the driveway. Because the complaint must be dismissed in any event, we need not decide whether the district court's failure to consider the issue of consent, standing alone, would require more than a retrial.

Concluding as we do that Penny had a valid defense of qualified immunity, we reverse the judgment of the district court and remand to that court with instructions to dismiss the complaint.