**UNITED STATES of America,
Plaintiff,**

v.

**Frank T. POLLARO, Defendant.**

**No. CR 09–850.**

United States District Court,
E.D. New York.

Aug. 16, 2010.

---

Loretta E. Lynch, United States Attorney, Eastern District of New York by William Campos, Esq., Assistant United States Attorney, Central Islip, NY, for Plaintiff.

Scaring & Brissenden, PLLC by Stephen P. Scaring Esq., Garden City, NY, for Defendant.

## MEMORANDUM AND ORDER

WEXLER, District Judge.[1]

Defendant Frank T. Pollaro ("Pollaro" or "Defendant") is charged with knowingly and intentionally receiving visual depictions involving minors engaged in sexually explicit conduct, in violation of 18 U.S.C., § 2252(a)(2). In connection with an ongoing investigation, Defendant's home was searched. Statements were taken and Defendant's computers were taken by law enforcement agents. While there was no warrant issued for the search, there is before the court a consent to search form signed by Defendant, and signed statements of Defendant's *Miranda* rights. There is also Defendant's handwritten statement confessing to having viewed hundreds of images of child pornography. That statement expresses Defendant's extreme remorse for his behavior.

Presently before the court is Defendant's motion to suppress his statements as well as evidence obtained from his home computers. For the reasons that follow, the motion is denied.

## BACKGROUND

### I. *Facts*

The facts set forth below were developed at a suppression hearing held before this court on July 15 and 20, 2010, as well as exhibits introduced and submissions of the parties. References to testimony at the suppression hearing are designated by "Tr." followed by the appropriate page number(s).

In or about May 2008, a Department of Homeland Security ("DHS") and Immigration and Customs Enforcement ("ICE") investigation of an America Online database revealed Defendant's e-mail account as one used to send and receive child pornography. Following up on this information, a team of DHS Special Agents (the "Agents"), arrived on November 19, 2009 at Defendant's Long Island, New York home at approximately 6:00 A.M. The Agents knocked on Defendant's door with the intent of obtaining consent to enter and search Defendant's home, including information contained on Defendant's computers. (Tr. 5). Defendant's wife, Paula Pollaro ("Mrs. Pollaro") answered the door, and the Agents identified themselves as Homeland Security agents. (Tr. 1–70). When Mrs. Pollaro inquired through the door as to the nature of their visit, the Agents replied, "suspicious activity on your computer." (Tr. 71). There is also testimony indicating that the Agents indicated a belief as to criminal activity on Defendant's computers, including "child exploitation." (Tr. 5–6, 31, 49). Mrs. Pollaro went upstairs to dress and then returned to let the agents enter the house. (Tr. 73). Agent Gerald Handley testified that Mrs. Pollaro was asked for "consent to take a look at the computers" (Tr. 6), and that she let them inside the house. (Tr. 31). Agent Richard Branda ("Branda") testified similarly that he asked Mrs. Pollaro whether she minded if the agents looked at the computers. (Tr. 49). Branda testified that Mrs. Pollaro responded affirmatively to his request and allowed the agents to enter. Mrs. Pollaro testified consistently with the Agents' version of the events both at the hearing and, as set forth in an affidavit submitted to the court. Thus, her testimony indicated that when asked about the home computers, she pointed to a laptop computer that was sitting on the dining room table. That laptop was visible from the foyer where the Agents entered

1. The Court acknowledges the valuable assistance of Ilana Arnowitz Drescher, a student at New York University School of Law, in the research and preparation of this opinion.

the home, and one of the agents proceeded to that computer. (Tr. 73; Def.'s Ex. A ¶ 8). The testimony at the hearing made clear to this court that Mrs. Pollaro gave her consent to the entry of the Agents and almost simultaneously pointed the Agents in the direction of the laptop computer.

The parties dispute whether the Agent's search of the laptop was commenced immediately upon entry to the home, or after Pollaro signed a written consent form. (Tr. 8; 101). The court credits the testimony of Agent Turner, and finds that Defendant sat at the table with the laptop, turned it on and signed a consent form before Turner began his examination of the contents of the computer. (Tr. 132–33). The consent form signed by Defendant notes that Defendant was advised of his right to refuse consent to the search, as well as the possibility that any material discovered during the search might be used against him in any criminal, civil or administrative proceeding.

The cordial and consensual nature of the Agents' entry and search of the Pollaro home is evidenced by the Pollaro's behavior during the search. Mrs. Pollaro prepared tea, offering some to the Agents. Defendant went about his morning routine, excusing himself to shower and dress during the Agents' search. While Defendant was in the shower, Mrs. Pollaro led the Agents upstairs to the room where the desktop computer was located. (Tr. 77). After showering and dressing, Pollaro went downstairs. Pollaro exited the house through the kitchen side door and entered the garage and opened the electronic garage door, presumably to take out the recycling. (Tr. 78). Agents Handley and Branda followed Pollaro into the garage, and advised him that due to the sensitive nature of the search results, he may wish to speak to them privately. (Tr. 39). Defendant agreed to remain in the garage to discuss the agents' findings. (Tr. 11). At one point during their conversation, Mrs. Pollaro opened the door and urged the group to come into the house, and out of the cold. The Agents declined the offer and informed Mrs. Pollaro that the conversation was almost over. (Tr. 105–06). Mrs. Pollaro closed the door, and waited at the kitchen table for the discussion to conclude. When the parties reentered the house, the agents seized Pollaro's laptop and his desktop computer for further investigation. (Tr. 14). Pollaro signed a receipt for the items, and the agents left a cellular phone number for Pollaro to call if he had any further questions. Pollaro then went to work as usual.

At approximately 4:15 P.M. on the same day, Defendant was arrested at his residence pursuant to an arrest warrant. (Tr. 15–16). Pollaro was thereafter transported to the a law enforcement office for further questioning. (Tr. 17). During the car ride, Special Agent Staco read Pollaro his *Miranda* rights, and Pollaro verbally waived these rights and agreed to speak to the Agents. (Tr. 18). Upon reaching their destination, Pollaro was again read his *Miranda* rights. He signed a written statement of waiver. Defendant then wrote a statement confessing to having viewed hundreds of images of child pornography and expressing his extreme remorse for his behavior. (Tr. 20, 111–12). Defendant was shown images of child pornography. He initialed those he remembered seeing on his computer (Tr. 21–23).

## DISCUSSION

### I. *Disposition of the Motion*

Defendant argues that he never gave valid consent for the Agents to: (1) enter his home; (2) search his laptop computer, nor (3) search the computer located in the upstairs office of his residence. Accordingly Defendant seeks suppression of all

evidence and statements obtained by law enforcement in connection with these searches. The court addresses each argument in turn.

### A. *Consent to Enter the Residence*

Defendant argues that deceptive and misleading statements made by the Agents render the consent to enter Defendant's home invalid. The court finds no such deception here.

A warrantless search, although generally considered unreasonable, is permissible under the Fourth Amendment if conducted on the basis of consent of an authorized person. *Schneckloth v. Busta-monte*, 412 U.S. 218, 245, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); *United States v. Lopez*, 547 F.3d 397, 398 (2d Cir.2008); *United States v. Lewis*, 386 F.3d 475, 481 (2d Cir.2004) (recognizing that "where authorized party consents to search "neither a warrant nor probable cause is necessary""); *United States v. Sylla*, 2010 WL 582575 *6 (E.D.N.Y.2010). Where, as here, the Government relies on consent to justify a warrantless search, it bears the burden of proving, by a preponderance of the evidence, that the consent was authorized and voluntary. *Florida v. Royer*, 460 U.S. 491, 496, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983); *United States v. Snype*, 441 F.3d 119, 131 (2d Cir.2006); *United States v. Wilson*, 11 F.3d 346, 351 (2d Cir.1993); *Sylla*, 2010 WL 582575 at *7. When determining whether the Government has carried its burden on this issue, a court must consider "the totality of all the circumstances" in which the consent was given. *See Ohio v. Robinette*, 519 U.S. 33, 40, 117 S.Ct. 417, 136 L.Ed.2d 347 (1996); *Schneckloth*, 412 U.S. at 226, 93 S.Ct. 2041; *see also United States v. Forero–Rincon*, 626 F.2d 218, 224 (2d Cir.1980) (consent is a question of fact to be determined from the totality of all the circumstances). This

inquiry is guided by an objective standard, and the ultimate question is whether the officer had a reasonable basis for believing that there had been consent to the search. *United States v. Garcia*, 56 F.3d 418, 423 (2d Cir.1995); *see also Florida v. Jimeno*, 500 U.S. 248, 251–52, 111 S.Ct. 1801, 114 L.Ed.2d 297(1991).

The court finds that the Agents accurately represented themselves from the beginning as DHS/ICE agents, and did not attempt to mask their identity. (Tr. 70). Although Mrs. Pollaro testified to have interpreted the Agents' statements to mean there was an issue of national security at hand, the agents made no statements confirming or denying this presumption. (Tr. 71). Moreover, Mrs. Pollaro never testified regarding her suspicions regarding a potential national security issue aloud, giving the agents no reason to know of (or correct) her erroneous belief. Rather, the agents merely informed Mrs. Pollaro of the nature of their visit—to investigate suspicious activity on her home computer, including the possibility of child exploitation, —and the evidence is clear that she willingly assisted them in their undertaking. (Tr. 71).

Even if the court were to give Defendant the benefit of the doubt, finding that the Agents misrepresented their identities (which they did not), the use of trickery or deception in gaining entry into a dwelling does not by itself necessarily violate a defendant's Fourth Amendment rights. *See, e.g., Lewis v. United States*, 385 U.S. 206, 87 S.Ct. 424, 17 L.Ed.2d 312 (1966); *United States v. Alejandro*, 368 F.3d 130, 135 (2d Cir.2004). In support of this motion, Defendant attempts to compare his situation to that in *United States v. Montes–Reyes*, 547 F.Supp.2d 281 (S.D.N.Y.2008), where the court held consent to have been invalid. There, however, the court's holding as to the invalidity

of the consent was based upon the agent's representation that entry was necessary in connection with the searching for a missing child. *See Montes–Reyes*, 547 F.Supp.2d at 287–91. The court was careful to distinguish between cases in which "the kind of 'extreme' misrepresentation of investigatory purpose by which a person is 'deprive[d] ... of the ability to make 'a fair assessment of the need to surrender his privacy'" and those in which "the deception in question was the use of an undercover agent who obtained otherwise voluntary consent through the use of his adopted identity." *Id.* at 288 (citation omitted). Here, even assuming the validity of Mrs. Pollaro's unspoken conjecture regarding any issue of national security and the presence of agents in her home, such circumstances would not rise to the level of the extreme deception required to render consent invalid. In sum, for the reasons set forth above, the court holds that the consent to enter the Pollaro's house was valid.

### B. *Consent To Search The Laptop Computer*

The court next considers Pollaro's claim that there was no valid consent to search his laptop computer. The court considers first whether the consent given by Mrs. Pollaro may be relied upon to validate the search of the laptop.

Consent by a third parties is valid where that third party "possessed common authority over or other sufficient relationship to the premises or effects sought to be inspected." *United States v. Matlock*, 415 U.S. 164, 171, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974). A co-inhabitant has the right to permit inspection in his own right. *See id.* at 172 n. 7, 94 S.Ct. 988. Further, voluntary consent "need not be expressed in any particular form, but 'can be found from an individual's words, acts,

or conduct.'" *United States v. Deutsch*, 987 F.2d 878, 883 (2d Cir.1993), quoting, *Krause v. Penny*, 837 F.2d 595, 597 (2d Cir.1988). "Thus, a search may be lawful even if the person giving consent does not recite the talismanic phrase: you have my permission to search." *United States v. Buettner–Janusch*, 646 F.2d 759, 764 (2d Cir.1981).

The court finds that there is no question but that Mrs. Pollaro gave clear consent to search the laptop. The Agent testified, and indeed, Mrs. Pollaro stated in her signed affidavit, that when the Agents inquired about the home computers, she pointed to a laptop that was visible from the foyer. During the hearing, Mrs. Pollaro further testified that she told the agents, "One [of our computers] is over there in the dining room and one is in our office upstairs." (Tr. 1, 73). Mrs. Pollaro also watched as an Agent sat at the computer, and did not protest his actions in any way. The evidence is overwhelming that Mrs. Pollaro's position as a co-inhabitant, and her conduct when asked about the computers, is sufficient to hold that there was valid consent to search the laptop.

Although not necessary to address, the court addresses Defendant's argument that the search was unlawful because it was commenced before he signed the written consent form. Factually, the court finds Defendant's version of the events to be highly unlikely, given the credible testimony of the Agents testifying at the hearing. Even if the court were to accept Defendant's tenuous claim that the written consent form was signed after the search, Agent Handley's testimony regarding Defendant's action during the computer search, *i.e.*, that Defendant turned on the computer for the Agent and stood over the Agent's shoulder during the search, is conduct that a reasonable officer would interpret as implied consent. (Tr. 14). *See Bu-*

*ettner–Janusch,* 646 F.2d at 764 ("consent may be inferred from an individual's words, gestures or conduct"). The temporal sequence of these particular events is, in any event, irrelevant, because, as noted, Mrs. Pollaro's oral consent was sufficient to validate the search.

### C. *Consent To Search The Desktop Computer*

■ Finally, the court addresses Defendant's claim regarding the validity of the search the desktop computer. This contention is fully unsubstantiated by all of the evidence adduced at the hearing. It is supported not only by the Agents' testimony, but by that of Mrs. Pollaro. In both her written affidavit and oral testimony, Mrs. Pollaro stated that she personally led Agents Handley and Turner to the upstairs home office and showed the Agents the desktop computer (Tr. 77). She further testified that she watched as Agent Turner began his investigation on the computer, informed her husband of the officers' presence in the office, and then returned downstairs. (Tr. 77). Like the search of the laptop, Mrs. Pollaro's authority as a co-inhabitant renders her consent to search the desktop computer valid.

### D. *Motion to Suppress Defendant's Statements*

■ Because the court holds that the agents' search was lawful, there is no need to address Defendant's argument that his statements are subject to the exclusionary rule as "fruits of a poisonous tree" and thus, inadmissible. The court turns to consider the argument that statements taken from Pollaro prior to his arrest were taken in violation of his *Miranda* rights. In support of his argument Defendant argues that the circumstances of his prearrest conversation with Agents Handley and Branda in the garage amounts to a custodial interrogation and that the agents' failure to advise him of his *Miranda* rights prior to questioning was a violation of his Fifth Amendment rights.

■ Agents Handley and Branda both testified credibly that Pollaro was, in fact, advised of his *Miranda* rights prior to the making of any statements. The court further holds that *Miranda* is, in any event, not at issue with respect to any statement made by Pollaro while he was in the garage with the Agents. *Miranda* requires that an individual be advised of his rights before he is subjected to custodial interrogation. *See Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Custodial interrogation is defined as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda,* 384 U.S. at 444, 86 S.Ct. 1602. The test for custody is an objective one, *i.e.,* "whether a reasonable person in Defendant's position would have understood himself to be subjected to the restraints comparable to those associated with a formal arrest." *United States v. Ali,* 68 F.3d 1468, 1472 (2d Cir.1995) (citation omitted). The Second Circuit has further emphasized that in the absence of actual arrest, an interrogation is not "custodial" unless the authorities affirmatively convey the message that the defendant is not free to leave. *See Campaneria v. Reid,* 891 F.2d 1014, 1020 n. 1 (2d Cir. 1989); *United States v. Lifshitz,* 2004 WL 2072468 *6 (S.D.N.Y.2004).

While custodial interrogation may be found while questioning is taking place in a defendant's home, the evidence here demonstrates that a reasonable person in Pollaro's position would have no reason to believe that he was under arrest, nor did the agents affirmatively convey that he was not free to leave. *Compare Orozco v.*

*Texas,* 394 U.S. 324, 327, 89 S.Ct. 1095, 22 L.Ed.2d 311 (1969) (petitioner held to be in custody despite fact that he was in his own home) *with United States v. Mitchell,* 966 F.2d 92, 98–99 (2d Cir.1992) (finding no custodial interrogation where, *inter alia,* law enforcement was welcomed into Defendant's home, Defendant was cooperative and there was no indication that Defendant was neither free to leave nor terminate the interview).

Throughout the search of his home, Pollaro was not deprived of his freedom at any time. Defendant moved freely around the house throughout the search and even went upstairs, unattended, to take a shower and get dressed for work during the course of the investigation. (Tr. 76). Agent Handley testified that the Defendant agreed to speak in the garage due to the private nature of the interview, and Agent Branda testified that Pollaro's demeanor was "relaxed but concerned." (Tr. 11; 55). Defendant himself testified that the Agents did not have their guns drawn, nor did they threaten him other than to insist upon the truth (Tr. 117–18). During the course of the hearing, Defendant did not testify as to any objective basis why he did not stop the interview. Indeed, Defendant testified that nothing the Agents said caused him to stay inside the garage (Tr. 126), and that they never put their hands on him (Tr. 125). Finally, Mrs. Pollaro stated that when she invited the group to come in from the garage, the agents did not shut the door or force her to leave but, rather, she closed the door between them and returned to the kitchen to wait for her husband. (Tr. 80).

Because Defendants statements were neither the fruits of an illegal search nor the product of an illegal custodial interrogation, the court holds there are no grounds to suppress any statement made by the Defendant.

### CONCLUSION

For the foregoing reasons, the court denies Defendant's motion to suppress. The Clerk of the Court is directed to terminate the motion.

SO ORDERED.