# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

May 17, 2011

Lyle W. Cayce
Clerk

No. 10-20132

UNITED STATES OF AMERICA,

Plaintiff-Appellee

v.

WASHINGTON MONTANYA, also known as Huilla, also known as Tulio Hurtado,

Defendant-Appellant

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:09-CR-368-2

Before REAVLEY, GARZA, and SOUTHWICK, Circuit Judges.

PER CURIAM:[*]

Washington Montanya appeals the denial of a motion to suppress following his conditional guilty plea to possession with intent to distribute five kilograms or more of cocaine. We review the district court's factual findings for clear error and its conclusions about the constitutionality of a warrantless search de novo. *United States v. Vega*, 221 F.3d 789, 795 (5th Cir. 2000). We AFFIRM.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 10-20132

Montanya argues that police impermissibly seized him from his garage without a warrant and without exigent circumstances. Montanya's arrest occurred along with that of his co-defendant, Armando Figueroa. While conducting surveillance of a known narcotics trafficker, police observed Montanya and Figueroa engage in an apparent drug deal with the target of the investigation and then followed them to what turned out to be Montanya's residence. They also observed Figueroa offloading a long cardboard box from the vehicle they had been following. Police knew from a registration check that the vehicle belonged to Montanya but the registration did not match the address of the house. When police approached Figueroa in the driveway they saw Montanya through the open garage door throw an apparent weapon under a car. They seized both Montanya and Figueroa and conducted a protective sweep of the home. Montanya and his wife, who was inside the house, separately gave consent to search, and police discovered 20 kilograms of cocaine in the cardboard box in the kitchen. Police also recovered a firearm from under the vehicle inside the garage.

Montanya concedes that police had probable cause to arrest him and Figueroa but asserts that the seizure from his garage was improper because any exigency for the arrest was manufactured by the officers. We see no manufactured exigencies under the circumstances in this case because "we see no evidence that the officers either violated the Fourth Amendment or threatened to do so prior to the point when they entered the [garage]." *Kentucky v. King*, No. 09-1272, __ S. Ct. __, 2011 WL 1832821, slip. op. at 17 (U.S. May 16, 2011); *see also United States v. Rico*, 51 F.3d 495, 502 (5th Cir. 1995) (holding that we examine the motivation of the police and the reasonableness and propriety of the investigative tactics that created the exigency). Police had probable cause to investigate Figueroa standing in plain view in the driveway, a place that is not constitutionally protected and in which there is no reasonable

2

expectation of privacy. *See, e.g., United States v. Brown*, 510 F.3d 57, 65 (1st Cir. 2007) (holding that when a driveway is exposed to public view it is not part of the home's curtilage protected by the Fourth Amendment). At that point, the officers knew that a substantial drug deal had likely just occurred and that the drugs had apparently been offloaded from a vehicle not registered to that location. When they saw Montanya throw an apparent weapon under the car they were justified in seizing him for officer safety and in conducting a protective sweep. *See United States v. Jones*, 239 F.3d 716, 721–22 (5th Cir. 2001) (holding that police could enter apartment when they viewed a gun through an open door after conducting a proper "knock and talk"); *United States v. Maldonado*, 472 F.3d 388, 394 (5th Cir. 2006) (holding that protective sweep may be reasonable to ensure officers' safety, particularly during drug arrests where the presence of weapons is not uncommon). We conclude that the officers' "actions that led up to the decision to discontinue covert surveillance, approach the . . . residence, and seize [Montanya]" were reasonable. *See Rico*, 51 F.3d at 502. They neither engaged nor threatened to engage in conduct that violated the Fourth Amendment, and Montanya's police-created exigency argument fails. *See King*, slip. op. at 8.

Montanya also argues that police impermissibly seized the cardboard box from the kitchen under the plain view doctrine because its incriminating nature was not apparent. The plain view doctrine is not implicated here because the district court found that Montanya gave voluntary consent to search the house, which Montanya has not addressed, and the officers testified at the suppression hearing that they did not begin the search and discover the drugs in the box until after consent had been granted. *See, e.g., Schneckloth v. Bustamonte*, 412 U.S. 218, 219, 93 S. Ct. 2041, 2043–44 (1973) (holding that a search conducted pursuant to consent is a well-settled exception to the Fourth Amendment's requirements).

No. 10-20132

Finally, Montanya argues that the officers' initial illegal seizure of him means that his consent was not an independent act of free will. *See United States v. Hernandez*, 279 F.3d 302, 307 (5th Cir. 2002) (analyzing admissibility of challenged evidence based on whether defendant's consent was (1) voluntarily given and (2) an independent act of free will). Whether consent was an independent act of free will depends on the causal connection of a constitutional violation. *Id.* Because we conclude that the officers' initial conduct was not a constitutional violation, Montanya's argument is unavailing.

AFFIRMED.