ACCEPTED
13-14-00448-CR
THIRTEENTH COURT OF APPEALS
CORPUS CHRISTI, TEXAS
5/20/2015 10:10:35 AM
DORIAN RAMIREZ
CLERK

## No. 13-14-448-CR

IN THE COURT OF APPEALS
FOR THE THIRTEENTH DISTRICT OF TEXAS
AT CORPUS CHRISTI

FILED IN
13th COURT OF APPEALS
CORPUS CHRISTI/EDINBURG, TEXAS
5/20/2015 10:10:35 AM
DORIAN E. RAMIREZ
Clerk

## ROLANDO ROMERO,
## APPELLANT,

## v.

## THE STATE OF TEXAS,
## APPELLEE.

ON APPEAL FROM THE 94TH DISTRICT COURT
NUECES COUNTY, TEXAS

## BRIEF FOR THE STATE

Douglas K. Norman
State Bar No. 15078900
Assistant District Attorney
105th Judicial District of Texas
901 Leopard, Room 206
Corpus Christi, Texas 78401
(361) 888-0410
(361) 888-0399 (fax)
douglas.norman@co.nueces.tx.us

Attorney for Appellee

## ORAL ARGUMENT IS REQUESTED

# TABLE OF CONTENTS

INDEX OF AUTHORITIES ............................................................................... ii

STATEMENT OF FACTS .................................................................................1

SUMMARY OF THE ARGUMENT .........................................................3

ARGUMENT ....................................................................................................4

**Reply Point No. 1**
**The trial court properly denied Romero's motion to suppress.**................4

      **I. Standard of Review.**........................................................................4
      **II. Burden of Proof.** ...........................................................................5
      **III. Officer Tackett's Right to Enter the Driveway.** .......................6
      **IV. Officer Tackett's Encounter with Romero.**...............................8

**Reply Point No. 2**
**The trial court properly refused to include an Article 38.23 instruction**
**in the jury charge.**......................................................................................... 13

PRAYER ........................................................................................................ 15

RULE 9.4 (i) CERTIFICATION .................................................................... 15

CERTIFICATE OF SERVICE ....................................................................... 16

# INDEX OF AUTHORITIES

## Cases

*United States v. Alvarez*, 213 F.3d 636 (5th Cir. 2000)...................................8

*Atkins v. State,* 882 S.W.2d 910 (Tex. App.-Houston [1st Dist.] 1994, pet. denied)....................................................................................................7

*Bower v. State,* 769 S.W.2d 887 (Tex. Crim. App. 1989)..............................7

*Brendlin v. California,* 551 U.S. 249, 127 S.Ct. 2400 (2007)................. 9, 10

*United States v. Brown,* 510 F.3d 57 (1st Cir. 2007)....................................8

*Buchanan v. State*, 129 S.W.3d 767 (Tex. App.-Amarillo 2004, pet. ref'd)...6

*California v. Hodari D.,* 499 U.S. 621, 111 S.Ct. 1547 (1991). ................... 11

*State v. Castleberry*, 332 S.W.3d 460 (Tex. Crim. App. 2011). ............... 8-11

*Crain v. State*, 315 S.W.3d 43 (Tex. Crim. App. 2010). ........................... 9-11

*Delosreyes v. State,* 853 S.W.2d 684 (Tex. App.-Houston [1st Dist.] 1993, no pet.). ....................................................................................................7

*Derichsweiler v. State*, 348 S.W.3d 906 (Tex. Crim. App. 2011)................ 12

*United States v. Dunn,* 480 U.S. 294, 107 S.Ct. 1134 (1987). ........................6

*Emiliano v. State*, 840 S.W.2d 102 (Tex. App.—Corpus Christi 1992, pet. ref'd). ................................................................................................ 6, 7

*Florida v. Bostick,* 501 U.S. 429, 111 S.Ct. 2382 (1991).................................9

*Ford v. State,* 158 S.W.3d 488 (Tex. Crim. App. 2005). ...............................5

*Garza v. State,* 126 S.W.3d 79 (Tex. Crim. App. 2004). ........................... 14

*Guzman v. State*, 955 S.W.2d 85 (Tex. Crim. App. 1997). ...........................5

*Horton v. California,* 496 U.S. 128, 110 S.Ct. 2301 (1990). ........................6

*United States v. Kessler*, 165 F.3d 24 (5th Cir. 1998)....................................8

*Krause v. Penny,* 837 F.2d 595 (2d Cir.1988)...............................................8

*Madden v. State,* 242 S.W.3d 504 (Tex. Crim. App. 2007). ........................ 13

*Martinez v. State*, 348 S.W.3d 919 (Tex. Crim. App. 2011). ..........................4

*United States v. McIver,* 186 F.3d 1119 (9th Cir.1999). ................................8

*United States v. Mendenhall*, 446 U.S. 544, 100 S.Ct. 1870 (1980). ........... 10

*United States v. Moffitt*, 233 Fed. Appx. 409 (5th Cir. 2007). .......................8

*United States v. Montanya*, 425 Fed. Appx. 392 (5th Cir. 2011). ..................8

*Oliver v. United States,* 466 U.S. 170, 104 S.Ct. 1735 (1984). .......................6

*United States v. Pineda-Moreno*, 688 F.3d 1087 (9th Cir. 2012). ..................8

*Robinson v. State*, 377 S.W.3d 712 (Tex. Crim. App. 2012). ................ 13, 14

*Rodriguez v. State*, 106 S.W.3d 224 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd). ..................................................................................................7

*State v. Ross*, 32 S.W.3d 853 (Tex. Crim. App. 2000). ...................................5

*Russell v. State,* 717 S.W.2d 7 (Tex. Crim. App. 1986). .................................5

*Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868 (1968). ........................................ 12

*Villarreal v. State,* 935 S.W.2d 134 (Tex. Crim. App. 1996) ..........................6

*Winter v. State*, 902 S.W.2d 571 (Tex. App.-Houston [1st Dist.] 1995, no pet.). ..............................................................................................................7

*State v. Woodard*, 341 S.W.3d 404 (Tex. Crim. App. 2011). ................... 9, 10

**Statutes & Rules**

Tex. Code Crim. Proc. art. 38.23. ................................................................. 13

NO. 13-14-448-CR

| ROLANDO ROMERO, | § | COURT OF APPEALS |
| Appellant, | § | |
| | § | |
| V. | § | FOR THE THIRTEENTH |
| | § | |
| THE STATE OF TEXAS, | § | |
| Appellee. | § | DISTRICT OF TEXAS |

**BRIEF FOR THE STATE**

TO THE HONORABLE COURT OF APPEALS:

**STATEMENT OF FACTS**

At a July 14, 2014, hearing on motion to suppress, Officer Braden Tackett testified that he saw Romero's vehicle parked in a driveway with the driver's door open and the interior light on (Supp. RR p. 10), and that he saw Romero in the vehicle leaning over and going through the glove box. (Supp. RR p. 11) Officer Tackett then walked up to Romero with the intent of making contact with him. (Supp. RR p. 12) When he reached the driver door, Officer Tackett said "Hey, what's going on." (Supp. RR pp. 14-15) Officer Tackett denied that he drew his weapon or gave Romero any orders at this time. (Supp. RR p. 16) This was the extent of Officer Tackett's interaction with Romero before he observed the cocaine at issue.

The State also admitted the transcript of an earlier motion to suppress as SX #1. (Supp. RR pp. 4-5) That exhibit reflects a May 18, 2012, motion

to suppress in a separate cause number, in which Officer Tackett had testified that he had seen Romero's vehicle parked at a residence at 2:00 in the morning, with the driver door open, the interior light on, and Romero rummaging through it. (SX # 1, pp. 5-6) Officer Tackett testified that the vehicle was in the driveway, which was open and could be seen from the road. (SX # 1, p. 7) As Officer Tackett approached the vehicle, he saw the ignition wires hanging below the steering column and Romero doing something around the steering column, such that it appeared that he might be trying to steal the vehicle. (SX # 1, p. 8) When Officer Tackett reached the door area, he said, "Hey," and "What's going on." (SX # 1, p. 8)

At the conclusion of the present July 14, 2014, hearing, the defense agreed with the trial court that the only issue was whether Officer Tackett could "walk up the driveway … and find contraband" (Supp. RR p. 38), and stated a little differently, whether he could "walk up and say, 'Hey, what's going on?'" (Supp. RR p. 39) The trial court took the motion under advisement, giving the parties the opportunity to brief the issues. (Supp. RR p. 42)

At a July 22, 2014, Pretrial Hearing, the trial court denied Romero's motion to suppress. (RR vol. 2, p. 4)

At trial, Officer Braden Tackett testified that, while patrolling at 2:00 in the morning, he noticed a truck in a driveway with the driver door open and the anterior light on, and a male bent over and rummaging through the vehicle. (RR vol. 5, pp. 29-30) Officer Tackett then walked up to the truck. (RR vol. 5, pp. 30-31) When Officer Tackett reached the driver door, he saw wires from the ignition hanging down and noticed that Romero had a clear plastic baggie with a white powdery substance in it, and then said to Romero "Hey, what's up?" (RR vol. 5, pp. 32-33) Officer Tackett testified that the area in question where he approached Romero was in an open front yard, not behind a fence or locked gate. (RR vol. 5, p. 52)

Rolando Romero testified and generally confirmed Officer Tackett's version of the initial encounter, disagreeing only with Tackett's testimony that he was bent over and rummaging through the glove box and that he had a baggie in his hand. (RR vol. 5, pp. 67-69)

At the charge conference, Romero made no request for an Article 38.23 instruction. (RR vol. 5, pp. 82-83)

## SUMMARY OF THE ARGUMENT

*First Issue* – The trial court properly denied Romero's motion to suppress, because Officer Tackett had the right to approach Romero on the open and accessible driveway in front of his residence, and to ask him what

3

was "up" or "going on," without either probable cause or reasonable suspicion.

*Second Issue* – The trial court properly did not include an Article 38.23 instruction in the jury charge because no evidence raised a question concerning the legality of the encounter or the admissibility of the evidence seized.

## ARGUMENT

### Reply Point No. 1
### The trial court properly denied Romero's motion to suppress.

By his first issue, Romero complains that the trial court erred in failing to suppress evidence developed after Officer Tackett contacted Romero because Officer Tackett supposedly had no authority to be present on the driveway next to Romero's truck and because his contact with Romero supposedly amounted to an illegal detention.

### I. Standard of Review.

In reviewing a trial court's ruling on a motion to suppress, the appellate court must apply a bifurcated standard of review, giving almost total deference to a trial court's determination of historic facts and mixed questions of law and fact that rely upon the credibility of a witness, but applying a *de novo* standard of review to pure questions of law and mixed questions that do not depend on credibility determinations. *Martinez v.*

4

*State*, 348 S.W.3d 919, 922-23 (Tex. Crim. App. 2011); *Guzman v. State*, 955 S.W.2d 85, 87-89 (Tex. Crim. App. 1997).

In a motion to suppress hearing, the trial court is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony, such that he may believe or disbelieve all or any part of a witness's testimony, even if that testimony is not controverted. *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000).

When the trial court fails to file findings of fact, the evidence is viewed in the light most favorable to the trial court's ruling, assuming that the trial court made implicit findings of fact that support its ruling as long as those findings are supported by the record. *Ross*, 32 S.W.3d at 855. If the trial judge's decision is correct on any theory of law applicable to the case, the decision should be sustained. *Ross*, 32 S.W.3d at 855-56.

## II. Burden of Proof.

To suppress evidence on an alleged Fourth Amendment violation, the defendant bears the initial burden of producing evidence that rebuts the presumption of proper police conduct. *Ford v. State,* 158 S.W.3d 488, 492 (Tex. Crim. App. 2005); *Russell v. State,* 717 S.W.2d 7, 9 (Tex. Crim. App. 1986). Specifically, the movant has the burden to establish that he had an expectation of privacy in the area into which the police allegedly intruded.

*Villarreal v. State,* 935 S.W.2d 134, 138 (Tex. Crim. App. 1996); *Buchanan v. State*, 129 S.W.3d 767, 771 (Tex. App.-Amarillo 2004, pet. ref'd).

### III. Officer Tackett's Right to Enter the Driveway.

The State may seize items in "plain view" if the initial intrusion is proper, such that the police have the right to be where they are, and the item is immediately apparent to the police to be evidence. *Horton v. California,* 496 U.S. 128, 136–37, 110 S.Ct. 2301, 2307–08, 110 L.Ed.2d 112 (1990); *Emiliano v. State*, 840 S.W.2d 102, 104 (Tex. App.—Corpus Christi 1992, pet. ref'd).

The Fourth Amendment protects the curtilage of a house, and the extent of the curtilage is determined by factors that bear upon whether an individual reasonably may expect that the area in question should be treated as the home itself. *United States v. Dunn,* 480 U.S. 294, 300, 107 S.Ct. 1134, 1139, 94 L.Ed.2d 326 (1987) (citing *Oliver v. United States,* 466 U.S. 170, 180, 104 S.Ct. 1735, 1742, 80 L.Ed.2d 214 (1984)); *Emiliano*, 840 S.W.2d at 104. Curtilage questions require an examination of the proximity of the intruded area to the home, the nature of uses to which the area is put, whether the area is within the home's enclosure, and the steps the resident took to protect the area from observation of passers-by. *Dunn,* 480 U.S. at 301; *Emiliano*, 840 S.W.2d at 104.

6

Specifically, there is no reasonable expectation of privacy if the activity viewed by an officer is visible from the street, or the curtilage is open to the public. *See Bower v. State,* 769 S.W.2d 887, 897 (Tex. Crim. App. 1989); *Atkins v. State,* 882 S.W.2d 910, 912 (Tex. App.-Houston [1st Dist.] 1994, pet. denied). The Court of Criminal Appeals has held that a person's Fourth Amendment rights are not violated when a law enforcement officer discovers evidence in plain view after intruding upon the curtilage if the officer approached the premises by the indicated usual route and did not deviate from the public pathway. *Bower,* 769 S.W.2d at 897. In *Bower,* this right to approach validated the act of a police officer entering the driveway and looking through a window into the garage. *Id.* at 897–98; see also *Emiliano*, 840 S.W.2d at 105 (citing *Bower*).

Other Texas cases have likewise generally held that the resident has a lessened and/or no reasonable expectation of privacy in readily accessible areas like driveways in front of his home. *See Rodriguez v. State*, 106 S.W.3d 224, 228 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd); *Winter v. State*, 902 S.W.2d 571, 575 (Tex. App.-Houston [1st Dist.] 1995, no pet.); *Delosreyes v. State,* 853 S.W.2d 684, 690 (Tex. App.-Houston [1st Dist.] 1993, no pet.). Federal cases as well suggest that an exposed and readily accessible driveway is not a part of the home's protected curtilage. *See*

*United States v. Pineda-Moreno*, 688 F.3d 1087, 1090 (9th Cir. 2012); *United States v. Montanya*, 425 Fed. Appx. 392, 393 (5th Cir. 2011); *United States v. Moffitt*, 233 Fed. Appx. 409, 411-12 (5th Cir. 2007); *United States v. Brown,* 510 F.3d 57, 65 (1st Cir. 2007); *United States v. Alvarez*, 213 F.3d 636 (5th Cir. 2000); *United States v. Kessler*, 165 F.3d 24 (5th Cir. 1998); *United States v. McIver,* 186 F.3d 1119, 1126 (9th Cir.1999); *Krause v. Penny,* 837 F.2d 595, 597 (2d Cir.1988).

In the present case, the evidence suggested that the driveway in question was open and could be seen from the road, such that Romero did not have a privacy interest that the Fourth Amendment would protect in connection with Officer Tackett's entry onto that driveway to make contact with Romero.

### IV. Officer Tackett's Encounter with Romero.

Having legitimately entered the driveway, Officer Tackett's only other action before discovering the cocaine in plain view was to say to Romero, "Hey, what's going on."

There are three distinct types of interactions between police and citizens: (1) consensual encounters, which require no objective justification; (2) investigatory detentions, which require reasonable suspicion; and (3) arrests, which require probable cause. *State v. Castleberry*, 332 S.W.3d

460, 466 (Tex. Crim. App. 2011) (citing *Florida v. Bostick,* 501 U.S. 429, 434, 111 S.Ct. 2382 (1991)); *see also State v. Woodard*, 341 S.W.3d 404, 410-11 (Tex. Crim. App. 2011); *Crain v. State*, 315 S.W.3d 43, 49 (Tex. Crim. App. 2010).

Whether the facts surrounding the interaction between a police officer and a citizen constitute a consensual police-citizen encounter or a Fourth Amendment detention is subject to a *de novo* review. *Castleberry*, 332 S.W.3d at 466.

Unlike an investigative detention and an arrest, consensual police-citizen encounters do not implicate Fourth Amendment protections. *Castleberry*, 332 S.W.3d at 466 (citing *Bostick,* 501 U.S. at 434); *see also Woodard*, 341 S.W.3d at 411; *Crain*, 315 S.W.3d at 49. An officer is just as free as anyone to stop and question a fellow citizen. *Castleberry*, 332 S.W.3d at 466 (citing *Bostick,* 501 U.S. at 434-35); *see also Woodard*, 341 S.W.3d at 411.

However, an encounter is no longer consensual when an officer, through physical force or a showing of authority, has restrained a citizen's liberty. *Castleberry*, 332 S.W.3d at 466 (citing *Brendlin v. California,* 551 U.S. 249, 254, 127 S.Ct. 2400 (2007)); *see also Woodard*, 341 S.W.3d at 411.

There is no bright-line rule to determine when an encounter becomes a seizure; instead, courts must take into account the totality of the circumstances surrounding the interaction to determine whether a reasonable person would have felt free to ignore the police officer's request or terminate the encounter. *Castleberry*, 332 S.W.3d at 466-67 (citing *Brendlin,* 551 U.S. at 255). The time, place, and surrounding circumstances must be taken into account, but the officer's conduct is the most important factor in determining whether a police-citizen interaction is a consensual encounter or a Fourth Amendment seizure. *Woodard*, 341 S.W.3d at 411; *Castleberry*, 332 S.W.3d at 467. Circumstances which might turn a consensual encounter into a seizure include "the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the *use of language or tone of voice* indicating that compliance with the officer's request might be compelled." *Crain*, 315 S.W.3d at 49-50 (quoting *United States v. Mendenhall*, 446 U.S. 544, 554, 100 S.Ct. 1870 (1980)).

In *Castleberry*, the Court of Criminal Appeals found only a consensual encounter when the officer did nothing more than approach the suspect, ask for identification, and question why he and his companion were walking through a certain area. 332 S.W.3d at 468.

In *Crain*, however, the Court of Criminal Appeals concluded that, when an officer encountered a walking suspect and called out to him through the window of his patrol car, the officer's "act of shining his patrol car's overhead lights in the appellant's direction, coupled with his request-that-sounded-like-an-order, to 'come over here and talk to me,'" amounted to a detention. 315 S.W.3d at 52.

In the present case, the evidence fails to support any show of authority beyond merely asking Romero what was going on, such that the encounter clearly did not escalate into a detention.

Moreover, even assuming that Officer Tackett's presence might have conveyed some sense of compulsion to Romero, there is no indication that Romero yielded in any manner to that supposed compulsion before the cocaine in question was discovered. When a suspect fails to yield to a show of physical force and there has been no actual use of physical force, then there is no seizure. *Castleberry*, 332 S.W.3d at 467 (citing *California v. Hodari D.,* 499 U.S. 621, 111 S.Ct. 1547 (1991)). In *Castleberry*, when the suspect ignored an officer's demands that he put his hands above his head, he was not detained or arrested until forced to comply. 332 S.W.3d at 469. In the present case, accordingly, absent any evidence that Romero yielded to Officer Tackett's supposed show of authority in some manner that had an

11

effect on the discovery of the contraband, the Fourth Amendment had not been violated in any manner that would require suppression of that contraband.

Finally, even if Romero had been detained by that time, and his detention had some effect on the discovery of the cocaine, Officer Tackett clearly had reasonable suspicion at that point.

A police officer has reasonable suspicion to detain if he has specific, articulable facts that, combined with rational inferences from those facts, would lead him reasonably to conclude that the person detained is, has been, or soon will be engaged in criminal activity. *Derichsweiler v. State*, 348 S.W.3d 906, 914 (Tex. Crim. App. 2011) (citing *Terry v. Ohio*, 392 U.S. 1, 21-22, 88 S.Ct. 1868 (1968)).

By the time Officer Tackett announced his presence to Romero, he had seen him rummaging through the vehicle late at night and wires hanging down from the steering column in a manner that suggested Romero might have been trying to steal the truck. This was clearly sufficient to show reasonable suspicion to detain.

The trial court properly denied Romero's motion to suppress.

Romero's first issue on appeal should be overruled.

**Reply Point No. 2**
**The trial court properly refused to include an Article 38.23**
**instruction in the jury charge.**

By his second issue on appeal, Romero complains that the trial court erred in failing to submit an Article 38.23 jury instruction concerning illegally obtained evidence.

The Code of Criminal Procedure provides that "[n]o evidence obtained by an officer ... in violation of any provisions of the Constitution or laws ... shall be admitted in evidence against the accused" at trial, and that, when evidence presented before the jury raises a question of whether the fruits of a police-initiated search or arrest were illegally obtained, "the jury shall be instructed that if it believes, or has a reasonable doubt, that the evidence was obtained in violation of the provisions of this Article, then and in such event, the jury shall disregard any such evidence so obtained." Tex. Code Crim. Proc. art. 38.23(a).

To be entitled to an Article 38.23(a) instruction, the defendant must show that (1) an issue of historical fact was raised in front of the jury; (2) the fact was contested by affirmative evidence at trial; and (3) the fact is material to the constitutional or statutory violation that the defendant has identified as rendering the particular evidence inadmissible. *Robinson v. State*, 377 S.W.3d 712, 719 (Tex. Crim. App. 2012) (citing *Madden v. State,*

242 S.W.3d 504, 509-10 (Tex. Crim. App. 2007)). Evidence to justify an Article 38.23(a) instruction can derive "from any source," no matter whether "strong, weak, contradicted, unimpeached, or unbelievable," but it must, in any event, raise a "*factual* dispute about how the evidence was obtained." *Robinson*, 377 S.W.3d at 719 (quoting *Garza v. State,* 126 S.W.3d 79, 85 (Tex. Crim. App. 2004)). Where the issue raised by the evidence at trial does *not* involve controverted historical facts, but only the proper application of the law to undisputed facts, that issue is properly left to the determination of the trial court. *Robinson*, 377 S.W.3d at 719.

For the reasons explained in the State's response to the first issue, no fact issue was raised that would have rendered the evidence in question inadmissible, such that Romero was not entitled to an Article 38.23 instruction.

Romero's second issue on appeal should be overruled.

## PRAYER

For the foregoing reasons, the State respectfully requests that the judgment of the trial court be affirmed.

Respectfully submitted,

/s/ *Douglas K. Norman*

_____

Douglas K. Norman
State Bar No. 15078900
Assistant District Attorney
105th Judicial District of Texas
901 Leopard, Room 206
Corpus Christi, Texas 78401
(361) 888-0410
(361) 888-0399 (fax)
douglas.norman@co.nueces.tx.us

## RULE 9.4 (i) CERTIFICATION

In compliance with Texas Rule of Appellate Procedure 9.4(i)(3), I certify that the number of words in this brief, excluding those matters listed in Rule 9.4(i)(1), is 2,964.

/s/ *Douglas K. Norman*

_____

Douglas K. Norman

**CERTIFICATE OF SERVICE**

This is to certify that a copy of this brief was e-mailed on May 20, 2015, to Appellant's attorney, Ms. Irma Sanjines, at irmasanjines@aol.com.


/s/ *Douglas K. Norman*
_____
Douglas K. Norman