Alvin K. Hellerstein, concurring:
I write separately because I believe that the majority's view of curtilage is too absolute, and because it does not give a police officer's reasonable suspicion any sway in the definition of curtilage.
It was 3:00 a.m., on a street in Staten Island. The police had stopped two men \with drugs from driving away, and arrested them. The defendant, a cousin of one of the two and the owner of the house, walked up a driveway to hide what appeared to be an opened bottle of alcohol from which he had been drinking, and to move another package from one place in his backyard to another. Officer Barreiro, tracing defendant's path up the driveway and seeing what defendant was doing, moved to the hiding spot, in the curtilage of defendant's house. Looking out, he scanned the backyard, performing a radius search of the back part of the backyard, away from defendant's residence. He spied another package, adjacent to a shack at the end of the driveway-a package that on further inspection revealed what appeared to be a gun sticking out. Another gun was inside the bag. Is that spot, adjacent to the driveway and away from the defendant's house, curtilage? The majority holds that it is, and excludes the package of guns from being admitted into evidence. In order to suppress the evidence, the majority reverses the careful factual findings of the district judge, applying the four factors for finding curtilage set out in the controlling case of United States v. Dunn , 480 U.S. 294, 107 S.Ct. 1134, 94 L.Ed.2d 326 (1987), as understood by the Supreme Court's most recent curtilage decision in Florida v. Jardines , 569 U.S. 1, 133 S.Ct. 1409, 185 L.Ed.2d 495 (2013).
First, the government based its appeal, not on the ground of Officer Barreiro's reasonable suspicion, but on the district court's definition of curtilage. Had the government not made that concession, the result might have been different. I believe it is important, in defining curtilage, whether a police officer's reasonable suspicion could justify the search, and whether the protected curtilage is away from the house.
A constitutional search typically must be premised on a judicially authorized warrant based on probable cause. However, an officer may, in limited circumstances, temporarily detain and conduct a limited search on an individual's person based on the officer's reasonable suspicion. See Terry v. Ohio , 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) ; United States v. Singletary , 798 F.3d 55, 59 (2d Cir. 2015) ("In Terry v. Ohio , the Supreme Court 'expressly recognized that government interests in effective crime prevention and detection, as well as in officer and public safety while pursuing criminal investigations, could make it constitutionally reasonable in appropriate circumstances and in an appropriate manner temporarily to detain a person' to investigate possible criminality even in the absence of a warrant or probable cause for arrest." (quoting United States v. Bailey , 743 F.3d 322, 331-32 (2d Cir. 2014) ) ).
True, the Supreme Court has held that "when it comes to the Fourth Amendment, the home is first among equals." Jardines , 569 U.S. at 6, 133 S.Ct. 1409. But the Fourth Amendment itself makes no distinction between persons and homes, see U.S. Const. Amend. IV, and the Supreme *639 Court has described the right to be secure in one's person as an "inestimable right of personal security" that "belongs as much to the citizen on the streets of our citizens as to the homeowner closeted in his study," Terry , 392 U.S. at 8-9, 88 S.Ct. 1868. If a reasonable suspicion can justify a limited search of one's person, I believe that the Constitution could permit a similar approach in the grey area of curtilage.[1]
Second and relatedly, I question whether the full perimeter of protected curtilage is an absolute proposition, or one that varies based on the factors laid out in United States v. Dunn . Dunn instructs courts to consider such factors as "the proximity of the area claimed to be curtilage to the home, whether the area is included within an enclosure surrounding the home, the nature of the uses to which the area is put, and the steps taken by the resident to protect the area from observation by people passing by." Dunn , 480 U.S. at 301, 107 S.Ct. 1134. I believe that these factors are more amenable to a sliding scale analysis, one that recognizes that a police officer, who had reasonable suspicion to follow defendant and could be subject to criticism if he had not, and who reasonably believed that the contraband would have disappeared if he had sought a warrant from a court, did not violate the Constitution.
I agree with the majority that defendant's backyard might be curtilage. It is bounded on three sides, and it is used by defendant for recreational and entertainment purposes. But it also is open to the neighbor, and anyone else who walks up the driveway, particularly a police officer who walked up the driveway because he reasonably suspected that defendant was hiding evidence of criminal conduct. No case holds that curtilage is absolute.[2] If it is an area next to a home, and allows entry into the home, whether physically or by sight or smell, it surely is curtilage, and so the Supreme Court holds. See *640 Jardines , 569 U.S. at 7, 133 S.Ct. 1409 (calling the front porch "the classic exemplar of an area adjacent to the home and 'to which the activity of home life extends' " (quoting Oliver v. United States , 466 U.S. 170, 182 n.12, 104 S.Ct. 1735, 80 L.Ed.2d 214 (1984) ) ). But if the area is far enough away not to threaten privacy within the home, it has elements both of "open field" and curtilage. If a police officer invades such an area without reasonable suspicion, he is invading the home owner's Fourth Amendment privacy. But if the officer enters because of reasonable suspicion that the backyard harbors crime, and if the circumstances do not allow time to obtain a warrant, the officer should not be held to have violated the owner's Fourth Amendment rights.
In sum, I do not believe that the binary choice between "open field" and curtilage, with no reference to the reasonable suspicion held by the officer, is the appropriate way to resolve these questions. But because the government stipulated away the issue of reasonable suspicion on appeal, I concur with the decision of the majority.

Support for a more flexible approach to curtilage determinations, based on the area in question and the exercise of an officer's reason and judgment, has received some treatment in the academic literature. See, e.g. , Stephanie M. Stern, The Inviolate Home: Housing Exceptionalism in the Fourth Amendment , 95 Cornell L. Rev. 905, 948-50 (2010) (arguing that "[a]reas of curtilage less likely to be implicated in intimate life, such as storage outbuildings, garages, and garbage within the curtilage could be subject to a reduced standard of reasonable suspicion" and recognizing that such reform "may be quietly beginning" based on "[t]he narrowing of curtilage protection" in the lower courts).

Our discussion of this issue in Krause v. Penny , 837 F.2d 595 (2d Cir. 1988), is instructive. In Krause , which was decided after Dunn and addressed the scope of curtilage in the context of qualified immunity, the plaintiff was arrested while standing in his driveway after a neighbor complained of harassment. Id . at 596. After the trial court instructed the jury that the arrest was unlawful based on the area's proximity to the home, we reversed, holding that the officer was entitled to qualified immunity. Id . at 596-97. As the majority explains, Krause proceeded on the assumption that the driveway was within the curtilage, but we noted in Krause that the Supreme Court "ha[d] not yet delineated 'the degree of Fourth Amendment protection afforded the curtilage, as opposed to the home itself.' " Id . (quoting Oliver v. United States , 466 U.S. 170, 180 n.11, 104 S.Ct. 1735, 80 L.Ed.2d 214 (1984) ). Recognizing that there was "substantial lower court authority for the proposition that areas such as driveways that are readily accessible to visitors are not entitled to the same degree of Fourth Amendment protection as are the interiors of defendants' houses," we held that the officer was entitled to qualified immunity. Id . at 597 (emphasis added).
I agree with the majority that Krause does not dictate the outcome of this case, for it concerned a more accessible area on the driveway and addressed only the officer's entitlement to qualified immunity. But Krause does stand for the proposition that the scope of Fourth Amendment protection in areas just within the boundary of curtilage may be more flexible than within the home itself.