11-4167(L)
United States v. Jiau

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

August Term 2012

(Argued: April 10, 2013      Decided: October 23, 2013)

Docket Nos. 11-4167(Lead), 12-2222(Con)
------------------------------------------x

UNITED STATES OF AMERICA,

    Appellee,

-- v. --

WINIFRED JIAU, aka WINI, aka SEALED DEFENDANT 1,

    Defendant-Appellant,


DONALD LONGUEUIL, SON NGOC NGUYEN, aka SONNY,

    Defendants.



------------------------------------------x

B e f o r e :   KEARSE, WALKER, and CHIN, Circuit Judges.

    Winifred Jiau appeals her conviction for conspiracy and insider trading in the District Court for the Southern District of New York (Rakoff, J.), asserting that evidence at trial was admitted in error and insufficient to support her conviction.  We agree with the district court that telephone conversations with a co-conspirator, which were recorded in the ordinary course of business, were admissible, and that evidence of non-pecuniary benefits conferred upon the tippers was sufficient to prove that the tippers had personally benefited from the insider trading conspiracy.  CONVICTION AFFIRMED.

                          RANDA D. MAHER, Law Office of Randa
                          Maher, Great Neck, New York, and
                          Winifred Jiau, pro se, Dublin,
                          California, for Appellant.

DAVID I. MILLER (Jenna M. Dabbs and Diane Gujarati, Assistant United States Attorneys, on the brief), for Preet Bharara, United States Attorney for the Southern District of New York, New York, NY, for Appellee.

JOHN M. WALKER, JR., Circuit Judge:

Defendant-Appellant Winifred Jiau was convicted, following a jury trial in the District Court for the Southern District of New York (Jed Rakoff, Judge), of conspiracy to commit securities fraud and wire fraud, in violation of 18 U.S.C. § 371, and insider trading, in violation of 15 U.S.C. §§ 78j(b) and 78ff, 17 C.F.R. § 240.10b-5 and 18 U.S.C. § 2. This opinion addresses Jiau's claims on appeal that (1) the district court erred in admitting evidence that she claims was recorded in violation of Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510-22 ("Title III"), and (2) the evidence against her was insufficient. We reject these arguments and affirm the conviction.[1]

## I. BACKGROUND

From September 2006 to December 2008, Jiau operated an insider trading scheme that involved a pair of tippers who worked at publicly-traded companies, Son Ngoc Nguyen of NVIDIA Corporation and Stanley Ng of Marvell Technology Group, Ltd., and a pair of tippees who were hedge fund managers, Samir Barai of Tribeca

---

[1] Jiau's other arguments on appeal, including those challenging certain orders that we vacate, are addressed in a summary order filed simultaneously with this opinion.

2

Capital Management and later Barai Capital Management ("BCM") and Noah Freeman of Sonar Capital Management and later SAC Capital. Jiau worked as a contract employee at NVIDIA and as a consultant who provided information about the semiconductor industry to financial analysts. At each of those jobs, she was aware of the rules against disclosing material non-public information.

Jiau's scheme was to obtain from her tippers earnings data of their employer companies and convey this data to her tippees before those companies' quarterly financial results were publicly released. The tippees compared the data with Wall Street analysts' published expectations and unpublished rumors known as the "whisper." If the data indicated that earnings would fail to meet expectations, the tippees would "go short" by selling their stock positions in the companies before the financial reports were made public. If the data showed that earnings would likely exceed Wall Street's expectations, the tippees would "go long" by buying the stock.

To provide an incentive, Jiau promised the tippers insider information for their own private trading. She also engaged in her own insider trading. After a three-week trial, a jury convicted Jiau of conspiracy to engage in insider trading and one substantive count of insider trading. On September 21, 2011, the district court sentenced her to 48 months' imprisonment and ordered a forfeiture of $3.118 million. This appeal followed.

3

## II. Discussion

### A. Motion to Suppress

Before trial, Jiau moved to suppress recordings of certain telephone conversations with the tippees that Barai had his subordinates record or transcribe as contemporaneous instant message notes. She asserted that the recordings and transcriptions were inadmissible under Title III, 18 U.S.C. §§ 2510-22. After holding a suppression hearing, the district court denied the motion, ruling that the recordings and transcriptions were not barred by Title III. United States v. Jiau, 794 F. Supp. 2d 484 (S.D.N.Y. 2011).

We review a district court's ruling on a motion to suppress for clear error as to the facts and de novo on questions of law, United States v. Rodriguez, 356 F.3d 254, 257 (2d Cir. 2004), and pay special deference to the district court's factual determinations going to witness credibility, Bennett v. United States, 663 F.3d 71, 85 (2d Cir. 2011).

Title III generally prohibits the interception or wiretapping of electronic communications not authorized by a court of law or permitted by one of the statute's exceptions. 18 U.S.C. § 2511. Among the exceptions permitting interceptions is one for a recording that is made "in the ordinary course of . . . business."

4

18 U.S.C. § 2510(5)(a)(i).[2]  A separate statutory exception permits a party to the communication, who is not acting under the color of law, to make the recording himself or consent to the recording.  18 U.S.C. § 2511(2)(d).  This latter exception does not apply, however, "if the communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or any State."  Id. Recordings in violation of Title III are inadmissible as evidence. 18 U.S.C. § 2515; United States v. Horton, 601 F.2d 319, 324 (7th Cir. 1979); Fleming v. United States, 547 F.2d 872, 874 (5th Cir. 1977).  The question presented here is whether, when a call is made in furtherance of an insider trading conspiracy but is recorded in the ordinary course of business, the recording is inadmissible under Title III.

It is undisputed that Barai had a hearing impairment, and consented to his subordinates listening in on, recording, or transcribing his telephone conversations for his and their benefit.[3]

---

[2]    The term "intercept" is defined under Title III as the "acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device."  18 U.S.C. § 2510(4).  A carve-out in the definition of "electronic, mechanical, or other device" exempts recordings made in the ordinary course of business from Title III's prohibition. 18 U.S.C. § 2510(5) (defining "electronic, mechanical, or other device" as "any device or apparatus" capable of intercepting wire communications other than "any telephone or telegraph instrument, equipment or facility, or any component thereof" used by a subscriber of such service in the "ordinary course of [the subscriber's] business").

[3]    Jiau, in her pro se reply brief, alleges that the government had

The recordings and transcriptions were therefore made in the ordinary course of business and therefore admissible under § 2510(5)(a)(i).  See Arias v. Mut. Cent. Alarm Serv., Inc., 202 F.3d 553, 559 (2d Cir. 2000) (finding ordinary course exception applicable where "[l]egitimate business reasons support the . . . recording of [such] calls"); see also 18 U.S.C. § 2510(5)(b) (permitting recordings made through "a hearing aid or similar device being used to correct subnormal hearing to not better than normal").  The recordings were also made with the consent of Barai, a party to the communication, and therefore admissible under § 2511(2)(d).

Jiau argues that the interceptions were made in furtherance of illegal insider trading and inadmissible because Barai would not have been able to understand the insider information without the recordings.  This argument conflates the purpose of the communications with the purpose of the recordings.  It is the

learned from a proffer by Barai on March 17, 2011 that Kurt Haatch, his assistant, made the recordings on his own accord, that the recordings were not made in the ordinary course of business, and that Jason Pflaum, who later discovered Haatch's recordings, had not made any recordings himself.  This information, she contends, constitutes exculpatory material that was not disclosed by the government until her sentencing.  She argues further that since Freeman was also on the calls, Barai did not need another person to listen in on, record, or transcribe the calls.  Jiau's principal brief on appeal does not raise these arguments, nor does the government address them.  After reviewing the record, we find no clear error in the district court's finding that Haatch had recorded two calls so Barai could have "all the details" and that Barai asked Pflaum to listen in on other calls.  Jiau, 794 F. Supp. 2d at 487.  In any event, there is no evidence to suggest the recordings and transcriptions were made with the intent to harm Jiau.

6

latter that controls. Notwithstanding that some of Barai's recorded calls were made to carry out illegal insider trading, in deciding whether a violation of Title III occurred, we look to why the calls were recorded and not why the calls were made. The carve-out within § 2511(2)(d), which renders inadmissible consented recordings made for the purpose of perpetrating "criminal" or "tortious" acts, is to be construed narrowly. It is confined to instances where the recording party intends to use the recording to harm or injure a recorded party, such as to blackmail, threaten, or publicly embarrass the recorded party. See In re DoubleClick Inc. Privacy Litig., 154 F. Supp. 2d 497, 514-15 (S.D.N.Y. 2001) (summarizing the legislative intent and history of § 2511(2)(d) and related case law). Hence, a Title III violation exists "if, at the time of the recording, the [recording party] plans to use the recording to harm the other party to the conversation." Caro v. Weintraub, 618 F.3d 94, 100 (2d Cir. 2010). On the other hand, "[i]f, at the moment he hits 'record,' the offender does not intend to use the recording for criminal or tortious purposes [against the other party], there is no violation." Id. In summary, the fact that an illegal enterprise was discussed in the recorded conversation is not determinative of a violation under § 2511(2)(d), United States v. McTiernan, 695 F.3d 882, 890 (9th Cir. 2012), because we look to the "intended use of the recordings"

7

to determine the purpose of the recording. In re High Fructose Corn Syrup Antitrust Litig., 216 F.3d 621, 626 (7th Cir. 2000).

When Barai's subordinates made the recordings and transcriptions, there was no indication that they intended to use the interceptions to harm Jiau, unlike in United States v. Vest, where a Title III violation was found because the recording was made to blackmail the recorded official to ensure his performance of his agreed role in a bribery scheme. 639 F. Supp. 899, 905-08 (D. Mass. 1986). Hence, the recordings and transcriptions at issue are also not inadmissable under § 2511(2)(d).

### B.    Sufficiency of Evidence

Jiau contends that the evidence at trial was insufficient to prove that (a) her tippers personally benefited from their disclosure of insider information; (b) Barai's firm acted on her information to carry out trades of Marvell stock on May 23 and 27-29, 2008; and (c) the information she supplied to her tippees met the materiality requirement of the securities laws.

We review the sufficiency of the evidence de novo and ask "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." United States v. Espaillet, 380 F.3d 713, 718 (2d Cir. 2004) (quotation marks omitted). "[A] judgment of acquittal" is warranted "only if the evidence that the defendant committed the crime alleged is

nonexistent or so meager that no reasonable jury could find guilt beyond a reasonable doubt." Id. (quotation marks omitted). Ample evidence supported each of the contested factual findings.

To hold Jiau criminally liable for insider trading, the government had to prove each of the following elements beyond a reasonable doubt: (1) the insider-tippers (Nguyen and Ng) were entrusted the duty to protect confidential information, which (2) they breached by disclosing to their tippee (Jiau), who (3) knew of their duty and (4) still used the information to trade a security or further tip the information for her benefit, and finally (5) the insider-tippers benefited in some way from their disclosure. See Dirks v. SEC, 463 U.S. 646, 659-64 (1983); SEC v. Obus, 693 F.3d 276, 289 (2d Cir. 2012).

### 1. Tippers' breach of duty and benefit

Jiau argues that the evidence was insufficient to establish that her two insider-tippers, Nguyen and Ng, benefited personally from the disclosures they made to her. Instead, she asserts, the trial evidence showed only that Nguyen gave her NVIDIA's earnings data "out of sheer desperation" to stop her relentless pestering of him for information and Ng shared similar data from Marvell because he was lonely and valued her friendship. Appellant Reply Br. 7. These arguments are unavailing.

"Personal benefit" is "broadly defined . . . [to] include[] not only 'pecuniary gain,'" Obus, 693 F.3d at 285 (quoting Dirks,

9

463 U.S. at 663), but also, inter alia, any "reputational benefit that will translate into future earnings," Dirks, 463 U.S. at 663, and "the benefit one would obtain from simply 'mak[ing] a gift of confidential information to a trading relative or friend.'" Obus, 693 F.3d at 285 (quoting Dirks, 463 U.S. at 664). The existence of "a relationship between the insider and the recipient that suggests a quid pro quo from the latter, or an intention to benefit the [latter]" may be sufficient to justify an inference of personal benefit. Id. at 664.

The benefits to Nguyen from tipping were manifold. Jiau treated him to meals at restaurants and gave him gifts including an iPhone, live lobsters, a gift card, and a jar of honey. She also provided Nguyen with insider information about other stocks and the two formed an investment club.

The evidence of personal benefit to Ng, while less abundant, is no less dispositive on this issue. Nguyen testified that Jiau asked him to recruit others into their investment club and he invited Ng, because Ng liked to trade stocks and had access to inside information at Marvell. The fact that Ng did not receive any tips from Jiau's investment club in return for the tips he gave is of no moment. In joining the investment club, Ng entered into a relationship of quid quo pro with Jiau, and thus had the opportunity to access information that could yield future pecuniary gain. The proof required to show personal benefit to the tipper is

10

modest and is satisfied with respect to both Nguyen and Ng.  See Obus, 693 F.3d at 292 ("In light of the broad definition of personal benefit set forth in Dirks, this [evidentiary] bar is not a high one.").

### 2.  Jiau's information as the basis for BCM's trades in Marvell stock in late May 2008

Jiau denies that BCM used insider information from her to trade Marvell shares in late May 2008, contending that (a) BCM was also getting insider information from another tipper, Tai Nguyen; (b) too little time had elapsed between the time of her phone call with Barai, who was not in the office on May 23, and the first of BCM's orders for Marvell stock; (c) there was no evidence of any directives from Barai to his staff to make the trades; and (d) BCM analysts reacted with disbelief to the information she provided and therefore could not have acted on it.  Her arguments ignore and misinterpret the record evidence, including Jason Pflaum's confirmation that the Marvell orders were placed right after the May 23 phone call, Barai's expression of gratitude to Jiau on May 29, and Tai Nguyen's lack of information about Marvell (he supplied information about NVIDIA).  The surprise that the BCM analysts expressed in reaction to her information could reasonably have been understood by the jury as astonishment at the gap between Wall Street's expectations and the data she reported, which they nevertheless exploited to build a large position in Marvell.  When viewed in the light most favorable to the government, the evidence

11

at trial was easily sufficient for the jury to find that the essential elements of the insider trading offense had been established.

### 3. Materiality of Jiau's information

Finally, Jiau asserts the government should have called an expert to explain whether the insider information she provided was actually material to a reasonable investor. While the decision of whether to admit or exclude expert testimony is left to the sound discretion of the district court, Gen. Elec. Co. v. Joiner, 522 U.S. 136, 142-43 (1997), expert testimony that seeks to address "lay matters which [the] jury is capable of understanding and deciding without the expert's help" is not relevant and is therefore inadmissible, Andrews v. Metro N. Commuter R.R. Co., 882 F.2d 705, 708 (2d Cir. 1989).

In this case, no expert testimony was necessary to help the jury interpret the materiality of the insider information Jiau provided to her tippees. The surprise professed by BCM analysts in reaction to her information regarding Marvell and the trades they made to exploit that information could have conclusively demonstrated materiality. Basic Inc. v. Levinson, 485 U.S. 224, 231-32 (1988) (defining materiality as whether a reasonable investor would have viewed the undisclosed information as having "significantly altered the total mix of information made available" (quotation marks omitted)). The jurors did not need an expert to

12

tell them that the information Jiau revealed made a noticeable difference in the investors' thinking that was manifested in the reaction of the BCM analysts and their subsequent trading.

**III. CONCLUSION**

For the foregoing reasons, and for those set forth in the accompanying summary order, the judgment of conviction and sentence, apart from the order of forfeiture, are <u>AFFIRMED</u>. As discussed in the accompanying summary order, the order of forfeiture and the order denying Jiau's 2012 <u>pro se</u> Rule 33 motion are <u>VACATED</u> and the case is <u>REMANDED</u> for further proceedings.