16-2634-cr
*United States v. Brothers*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 10th day of May, two thousand seventeen.

Present:
> JOHN M. WALKER, JR.,
> DEBRA ANN LIVINGSTON,
> GERARD E. LYNCH,
> *Circuit Judges*.

_____

UNITED STATES OF AMERICA,

> *Appellee*,

> v.                                                                      16-2634-cr

CLAYTON BROTHERS,

> *Defendant-Appellant*.

_____

For Appellee:                                RAJIT S. DOSANJH, for Richard S. Hartunian, United States Attorney for the Northern District of New York, Syracuse, New York

For Defendant-Appellant:          DANIEL DEMARIA, Merchant Law Group LLP, New York, New York

Appeal from a judgment of the United States District Court for the Northern District of

New York (Sannes, *J.*).

1

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Appellant Clayton Brothers pleaded guilty on March 25, 2016 in the Northern District of New York to possession of a firearm and ammunition by a convicted felon in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). The district court sentenced him principally to forty-six months' imprisonment and three years' supervised release. Judgment was entered on July 19, 2016. As permitted by his conditional plea agreement, Clayton appeals the district court's order denying, as relevant here, his motion to suppress physical evidence seized from his home. Assuming the parties' familiarity with the facts, the procedural history of the case, and the issues on appeal, we elaborate only as necessary to explain our decision.

### Background[1]

Clayton Brothers was convicted of robbery in Pennsylvania in 1996. While on parole for this conviction, he relocated to Russell, New York, and came under the supervision of New York State Parole authorities. In Russell, he resided at 861 Blanchard Hill Road, a property he owned. During the period relevant to this appeal, he lived there with his wife, Jamie Brothers, and two of her children. Beginning in February 2014, another of Jamie Brothers's children, Robyn Hicks, and her then-boyfriend, John Parker, came to stay at the residence.

In late April 2014, Appellant's New York State Parole Officer, Christopher Lawrence, received a call from New York State Police Investigator Christopher Nye about allegations that Clayton Brothers had sexually abused his stepdaughters. That morning, Lawrence visited 861 Blanchard Hill Road. While there, he learned from Jamie Brothers that she had confronted her

---

[1] The following facts are gleaned from the suppression hearing transcript and the documents submitted by the parties in relation to the motion to suppress.

husband about the sexual abuse allegations on the previous day, and that Clayton Brothers had left on his motorcycle. That day, Lawrence also received information from Jamie Brothers that her husband's credit or debit card had been used in Watertown, New York and in Winchester, Virginia.

A few days later, on April 28, 2014, Lawrence, accompanied by another parole officer and two agents from the Department of Homeland Security ("DHS"), visited 861 Blanchard Hill Road. The purpose of the visit was to investigate the sexual abuse allegations, specifically, to look for video recordings or similar contraband related to the allegations. Although Clayton Brothers was not present for this visit, some of the other occupants were, including Jamie Brothers and her daughter's boyfriend, Parker. Neither the DHS agents' search of computers in the home, nor Lawrence's cursory search of the property, turned up any contraband. Before leaving the property, however, Lawrence told those present that if they looked around and found anything unusual or suspicious, they should contact him so he could investigate further.

That evening, according to Lawrence's testimony at the suppression hearing, Jamie Brothers called to inform him of firearms and accessories Parker had discovered at 861 Blanchard Hill Road. The following morning, April 29, 2014, Lawrence and Nye visited the Brothers's residence to investigate. They did not have a warrant to search the property. Only Parker was home at the time, and he showed Lawrence and Nye the items he had found (various firearms, ammunition, and body armor) and the places where he had found them (in concealed, but unlocked, crawl spaces above Clayton Brothers's bedroom closet and above a detached garage). Nye took possession of the items. Twice in May 2014, Parker contacted law enforcement about additional contraband found on the property, which law enforcement also

3

seized.  In June 2014, Jamie Brothers reported ammunition found on the property, which law enforcement again seized.

In January 2015, law enforcement arrested Clayton Brothers in South Carolina for violating his Pennsylvania parole.  While serving a six-month prison sentence for this violation, he was indicted in the Northern District for five counts of unlawfully possessing firearms and ammunition as a convicted felon.

Prior to his guilty plea, Clayton Brothers moved, in relevant part, to suppress the physical evidence recovered from his home, alleging that the items had been seized in violation of the Fourth Amendment's prohibition against unreasonable searches and seizures.  After a hearing and supplemental submissions, the district court denied his suppression motion, concluding that, although Parker had acted as an agent of law enforcement when he searched 861 Blanchard Hill Road and found the firearms, ammunition, and other physical evidence, Jamie Brothers had validly consented to the searches.  Moreover, even had Jamie Brothers not consented to Parker's searches, the district court concluded that the search conducted by Parker on April 28, 2014 was lawful as a search reasonably related to the performance of Lawrence's duties as a parole officer, and pursuant to Clayton Brothers's parole conditions.  Clayton Brothers challenges the latter two conclusions, and we affirm the district court.

## Discussion

On appeal from a district court's disposition of a motion to suppress evidence, we review legal conclusions de novo and findings of fact for clear error.  *United States v. Bershchansky*, 788 F.3d 102, 108 (2d Cir. 2015).[2]  Reversal for clear error is appropriate if, after reviewing the

---

[2] In reviewing a district court's factual findings in connection with a motion to suppress evidence, we have not decided whether we should view the evidence in the light most favorable to the prevailing party or should simply review for clear error without construing the evidence in the prevailing party's favor.

4

record we are "left with the definite and firm conviction that a mistake has been committed." *Id.* at 110 (quoting *United States v. Andino*, 768 F.3d 94, 98 (2d Cir. 2014)). We afford "special deference to the district court's factual determinations going to witness credibility." *Id.* at 108 (quoting *United States v. Jiau*, 734 F.3d 147, 151 (2d Cir. 2013)). Moreover, "[w]here there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Id.* at 110 (quoting *United States v. Murphy*, 703 F.3d 182, 188 (2d Cir. 2012)).

The Fourth Amendment's prohibition against "unreasonable searches and seizures," *see* U.S. Const. amend IV, generally requires that a constitutionally valid search be pursuant to probable cause and a warrant, unless a recognized exception applies. *Moore v. Andreno*, 505 F.3d 203, 208 (2d Cir. 2007). One settled exception to the warrant requirement is voluntary consent by an authorized person, which may include a third party. *United States v. Matlock*, 415 U.S. 164, 165–66, 171 n.7 (1974); *Moore*, 505 F.3d at 208. "[A] third party has authority to consent to a search of a home when that person (1) has access to the area searched and (2) has either (a) common authority over the area, (b) a substantial interest in the area, or (c) permission to gain access to the area." *Moore*, 505 F.3d at 208–09. We have observed that "consent . . . need not be expressed in a particular form but 'can be found from an individual's words, acts or conduct.'" *United States v. Deutsch*, 987 F.2d 878, 883 (2d Cir. 1993) (quoting *Krause v. Penny*, 837 F.2d 595, 597 (2d Cir. 1988)).

Appellant first contends that the district court erred in concluding Jamie Brothers had common authority over and access to the areas where Parker found the physical evidence. We

---

*Id.* at 110. We need not decide the question here, as we conclude it does not affect the outcome.

disagree.[3]  Specifically, Appellant challenges two factual findings underpinning the district court's conclusion: (1) with respect to her common authority over the property searched, that Jamie Brothers appeared to be a co-owner of the property; and (2) with respect to her access to the areas searched, that the couple shared a bedroom.   Neither challenge is availing.

On the first point, the district court based its conclusion that Jamie Brothers "appears to be a co-owner of the property," J.A. 267, on a statement in a letter from Clayton Brothers to his wife expressing his interest in buying out her "percentage of award on the property" if she chose to relocate, G.A. 25.   Although, as Appellant argues, one permissible interpretation of this statement is that Appellant anticipated a divorce court granting his wife some interest in the property in the future, the district court's conclusion that this statement indicated Jamie Brothers's likely existing interest in the property is also permissible, and in no way clearly erroneous.   *See Bershchansky*, 788 F.3d at 108 (noting that where "there are two permissible views of the evidence," the district court's "choice between them cannot be clearly erroneous" (quoting *Murphy*, 703 F.3d at 188)).   And in any event, the validity of third-party consent rests not "upon the law of property . . . but . . . on mutual use of the property by persons generally having joint access or control for most purposes."   *Matlock*, 415 U.S. at 172 n.7; *see also United States v. Cataldo*, 433 F.2d 38, 40 (2d Cir. 1970) (noting that when two or more persons together occupy a home, "the general rule is that one joint tenant can consent to a search of the dwelling place").

---

[3]  The government suggests that Appellant failed to make this argument before the district court and that this challenge is accordingly subject to plain error review.   Although it appears Clayton Brothers at least alluded to this argument in one of his submissions before the district court, *see United States v. Brothers*, No. 15-cr-198-BKS, Dkt. No. 22, at 4, we need not address the standard of review in light of our conclusion here that regardless whether the plain error standard applies, the district court did not err in concluding that Jamie Brothers had common authority over and access to the premises.

6

The record before the district court contains ample evidence tending to show that Jamie Brothers was a person possessing such joint access and control. As the district court found, she lived at the residence and was married to Clayton Brothers, who did not meaningfully restrict her access to any relevant part of the property. Indeed, Clayton Brothers appears to have abandoned the home to his wife after she confronted him about the sexual abuse allegations. Appellant challenges the district court's factual finding that Jamie Brothers shared with Clayton the bedroom that led to the closet attic that contained much of the evidence found by Parker. This factual conclusion, however, was supported by Parker's sworn statement that he found contraband "in a crawl space above the closet of Jamie [and] Clayton's bedroom," J.A. 232. It was not clearly erroneous. At bottom, we agree with the district court's conclusion—further premised on the record evidence establishing that the Brothers lived together on the property as spouses and that Clayton Brothers did not meaningfully restrict his wife's access to the searched areas—that Jamie Brothers had the authority to consent to Parker's searches. *Cf. Moore*, 505 F.3d at 210–11, 212–13.

Appellant next attacks the district court's conclusion that Jamie Brothers in fact consented to the searches. To this end, Appellant first challenges one of several factual findings underlying the district court's conclusion that Jamie Brothers consented to the searches—namely, that Jamie Brothers called Lawrence on the evening of April 28, 2014 to report that Parker had found contraband at 861 Blanchard Hill Road. In Appellant's view, the better conclusion is that Parker, not Jamie Brothers, contacted Lawrence. But while some evidence supports the conclusion that Parker called Lawrence, Lawrence testified at the suppression hearing that the call came from Jamie Brothers. The district court was entitled to

7

credit this testimony and we discern no basis for second-guessing the district court's choice. *See Bershchansky*, 788 F.3d at 108.

At bottom, Appellant contends that there was insufficient evidence to support the district court's conclusion that Jamie Brothers validly consented to Parker's searches. The record reflects that, although she did not testify at the suppression hearing, Jamie Brothers assisted and cooperated with law enforcement's investigation into her husband. She volunteered information about Clayton Brothers's whereabouts, was present when Lawrence instructed the family to look for suspicious items, and reported Parker's discovery of contraband to Lawrence. We cannot say the district court erred in concluding that she consented to and cooperated in Parker's searches. *See Deutsch*, 987 F.2d at 883; *United States v. Peterson*, 100 F.3d 7, 11 (2d Cir. 1996); *United States v. Buettner-Janusch*, 646 F.2d 759, 764–65 (2d Cir. 1981).

Because we concur in the district court's denial of Clayton Brothers's motion to suppress on the ground that Jamie Brothers had the authority to, and did, consent to the challenged searches, we express no view on the district court's alternative holding that certain searches were lawful because they were reasonably related to the performance of Lawrence's duties as a parole officer, and were conducted pursuant to Clayton Brothers's parole conditions.

\* \* \*

We have considered Appellant's remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

8