18-2243-cr
*United States of America v. Jason Marley*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 15th day of January, two thousand twenty.

PRESENT:    BARRINGTON D. PARKER,
            DENNY CHIN,
            JOSEPH F. BIANCO,
                    *Circuit Judges*.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

UNITED STATES OF AMERICA,
                    *Appellee*,

                    v.                            18-2243-cr

JASON MARLEY, aka MAURNEY, aka BARBER,
                    *Defendant-Appellant*,


ORLANDO HARLEY, aka OLIVER, aka
GUNNER, NYKOLI WILLIAMS, aka SHAUNEY,
RADIANNA THOMPSON, aka RAIDY,
                    *Defendants*.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x


FOR APPELLEE:                    DAVID ABRAMOWICZ, Assistant United
                                 States Attorney (Timothy V. Capozzi, Michael

D. Longyear, Won S. Shin, Assistant United States Attorneys, *on the brief*), *for* Geoffrey S. Berman, United States Attorney for the Southern District of New York, New York, New York.

FOR DEFENDANT-APPELLANT: MATTHEW BRISSENDEN, Matthew W. Brissenden, P.C., Garden City, New York.

Appeal from the United States District Court for the Southern District of New York (Caproni, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED.**

Defendant-appellant Jason Marley appeals from a judgment entered July 31, 2018, following a jury trial, convicting him of participating in a narcotics conspiracy, in violation of 21 U.S.C. § 846, and using and carrying firearms during a narcotics conspiracy, in violation of 18 U.S.C. § 924 (c)(1)(A)(i) and (2).

On appeal, Marley argues that the district court erred in denying his motion to suppress.  We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal.

I.    *The Facts*

A.    *The Suppression Hearing*

The district court held a suppression hearing on July 20 and 21, 2017, which established the following facts:  In 2014, the Drug Enforcement Agency (the

"DEA") began a money laundering investigation into Joseph Stern.  On February 4, 2015, DEA Special Agent James Enders was reviewing data from a pen register on Stern's cellphone and noticed it had been in contact with a phone number ending in 4484 (the "4484 number") several times on February 3 and 4, 2015.  The pattern of the contacts between Stern's phone and the 4484 number led Enders to believe that Stern and the 4484 number were involved in a money laundering scheme.

That same day, DEA Special Agent Marlow Luna, who was working with Enders, called the 4484 number.  Luna spoke in Spanish and claimed he was calling on behalf of "Julian" -- a made-up name.  The recipient of the call asked Luna if he was calling on behalf of "Felipe," to which Luna responded yes.  Luna told the recipient that he "had a hundred to give him."  App'x at 302.  The recipient responded that he was out of town and could meet later that week when he returned to New York City.  After the call, an Assistant District Attorney (the "ADA") applied for a pen register and GPS tracking order for the 4484 number, submitting an affidavit that, *inter alia*, summarized the events relating to Luna's undercover telephone call.  Later that day, a state court judge approved an order authorizing the collection of geolocation information from the 4484 number (the "February 2015 Order").

On February 8, 2015, as a result of the geolocation data collected from the February 2015 Order, DEA agents identified and stopped a vehicle in which Marley was a passenger.  Marley and the driver were arrested after the agents smelled marijuana.

3

Upon his arrest, agents seized the 4484 phone, a second phone with a 3271 number, and $20,000 in cash.

### B.    *Additional Evidence*

In March and April 2015, the government obtained three judicially authorized wiretaps on Stern's phones (the "Stern Wiretaps"). The affidavits supporting these wiretaps referenced Marley and included a summary of the events leading up to the February 2015 Order. The affidavits, however, also contained other facts regarding Stern's activities. The Stern Wiretaps intercepted multiple communications between Stern and Marley, who was using the 3271 number.

The Stern Wiretaps also led to incriminating communications between Stern and a Jamaican phone number later revealed to belong to Carlton Powell. The Jamaican government also obtained wiretaps on the phone numbers associated with Powell (the "Powell Wiretaps"). The Powell Wiretaps intercepted communications between Powell and Marley involving drug trafficking.

From January to April 2016, the government intercepted communications over several phones used by Marley. On December 30, 2015, DEA agents were authorized to wiretap the 3271 number and a 9720 number also tied to Marley. This wiretap and two subsequent wiretaps enabled the government to gather significant evidence of criminal activity. The wiretaps also led the government to obtain warrants

4

to search five locations in Brooklyn and Queens where the government seized marijuana, cocaine, and firearms, and arrested several individuals.

## II.   *Proceedings Below*

On April 3, 2017, Marley filed his motion to suppress. First, Marley challenged the February 2015 Order authorizing the collection of geolocation data from the 4484 phone. Marley argued that the affidavit submitted to obtain the February 2015 Order contained misstatements in violation of *Franks v. Delaware*, 438 U.S. 154 (1978). Marley sought to suppress the geolocation data collected pursuant to the February 2015 Order and other categories of evidence that he argued were fruits of the *Franks* violation. Second, Marley argued that the two cellphones seized incident to his arrest on February 8, 2015, were unlawfully searched that night without a warrant in violation of the Fourth Amendment.

On October 31, 2017, the district court denied Marley's suppression motion. The district court concluded that paragraph 12 of the affidavit supporting the February 2015 Order contained several misleading statements exaggerating the evidence gathered from Luna's undercover call. Nonetheless, the district court "substitut[ed] the facts as disclosed in Luna's testimony for the misleading statements in the affidavit, and supplement[ed] the affidavit with facts that were omitted," and concluded that the corrected affidavit would have supported a finding of probable cause. S. App'x at 14. As a result, the district court held that the misstatements were

5

not material and that Marley failed to show a *Franks* violation. The district court declined to reach the question of whether the ADA and DEA agents made the misstatements "deliberately or recklessly." S. App'x at 15. The district court also concluded that Marley's cellphones were not unlawfully searched the night of his arrest.

On March 19, 2018, a jury found Marley guilty on both counts. On July 31, 2018, the district court sentenced Marley principally to 96 months' imprisonment on Count 1 and 60 months' on Count 2, to be served consecutively. This appeal followed.

## STANDARD OF REVIEW

In evaluating a district court's ruling on a motion to suppress, "we review legal conclusions *de novo* and findings of fact for clear error." *United States v. Bershchansky*, 788 F.3d 102, 108 (2d Cir. 2015) (internal citation and quotation marks omitted). We give special deference to the district court's "factual determinations going to witness credibility." *United States v. Jiau*, 734 F.3d 147, 151 (2d Cir. 2013).

## DISCUSSION

Marley challenges the seizures resulting from the February 2015 Order and the purported warrantless search of his cellphones.

### I. *The February 2015 Order*

"To suppress evidence obtained pursuant to an affidavit containing erroneous information, the defendant must show that: (1) the claimed inaccuracies or omissions are the result of the affiant's deliberate falsehood or reckless disregard for the

6

truth; and (2) the alleged falsehoods or omissions were necessary to the [issuing] judge's probable cause finding." *United States v. Canfield*, 212 F.3d 713, 717-18 (2d Cir. 2000) (quoting *United States v. Salameh*, 152 F.3d 88, 113 (2d Cir. 1998) (internal quotation marks omitted)). When an affidavit in support of a wiretap contains inaccurate information, we remove that information from consideration and review the affidavit *de novo* to determine if probable cause still exists. *Canfield*, 212 F. 3d at 718. In assessing the materiality of the false statements, this Court has instructed that the "first task is to correct the affidavit to account for the alleged inaccuracies." *Id.*

Under *Franks*, "[t]he ultimate inquiry on a motion to suppress is not . . . whether the affidavit contains false allegations or material omissions, but whether after putting such aside, there remains a residue of independent and lawful information sufficient to support probable cause." *United States v. Ferguson,* 758 F.2d 843, 849 (2d Cir. 1985). Here, after conducting a *Franks* hearing, the district concluded that the affidavit without the inaccuracies and misstatements was still sufficient to establish probable cause. We agree.

As corrected by the district court, the facts in the affidavit support a finding of probable cause: Luna was an experienced DEA agent who participated in numerous drug and money laundering investigations. The 4484 phone was identified during the money laundering investigation involving Stern. Based on their experience in such investigations, the DEA agents identified a pattern of calls between Stern and

7

the 4484 phone suggesting money laundering activities.  In the undercover phone call, the recipient of the phone call responded in a way that suggested he implicitly agreed to meet Luna about the "hundred" he had "to give him."  App'x at 302.  Viewed in the totality of the circumstances, these facts are sufficient to support probable cause.  Consequently, even without the inaccuracies and omitted information, the affidavit would have supported a determination of probable cause.

The district court properly concluded that the remaining portions of the affidavit were sufficient to support a finding of probable cause.[1]

II.  *The Warrantless Search of Marley's Phones*

Finally, the district court did not commit clear error when it rejected Marley's allegation that officers searched his phone without a warrant after his February 8, 2015 arrest.  In his *pro se* brief, Marley argues that the toll records and geolocation data "show that DEA agents bypassed the password protected cellphones and accessed data stored within the phones."  Appellant's *Pro Se* Br. at 3.

The district court ruled, based largely on credibility determinations, that Marley's allegation was "baseless speculation."  S. App'x at 23.  In so ruling, the district court found the agents' testimony credible that they "knew of no one at the DEA office

---

[1]  The parties disagree as to whether the district court was permitted, in addition to striking inaccurate information, to insert omitted truths.  We need not decide the issue, as we conclude the affidavit was sufficient even without the omitted information -- the pattern of calls between the 4484 number and the third number.

8

the evening of the arrest who had broken through the passwords and searched the phones, let alone had the training to do so." S. App'x at 23-24. The district court did not commit clear error in rejecting Marley's arguments. First, Marley argued that the geolocation data somehow showed that the agents searched his phone, but this Court has held that testimony concerning the interpretation of geolocation data requires expert testimony. *See United States v. Natal*, 849 F.3d 530, 536 (2d Cir. 2017) (per curiam) (holding that under the Federal Rules of Evidence, testimony regarding how cell phone towers operate requires expertise because it is based on scientific, technical, or other specialized knowledge). Second, even if we credit Marley's interpretation of the geolocation data, the fact that Marley's phone was turned off and on does not establish that his phones -- which were passcode protected -- were unlawfully searched.

*   *   *

We have considered Marley's remaining arguments and conclude they are without merit. For the foregoing reasons, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

9