*United States v. Frye*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 8th day of September, two thousand twenty.

PRESENT:  DENNIS JACOBS,
　　　　　　　RICHARD J. SULLIVAN,
　　　　　　　　　*Circuit Judges*,
　　　　　　　JESSE M. FURMAN,
　　　　　　　　　*District Judge*.*

-----------------------------------------------------------------

UNITED STATES OF AMERICA,

　　　　　　　　　*Appellee*,

　　　　　　v.　　　　　　　　　　　　　　　　　　No. 18-3849-cr

QUINCEY FRYE,

　　　　　　　　　*Defendant-Appellant*.

---

* Judge Jesse M. Furman of the United States District Court for the Southern District of New York, sitting by designation.

-----------------------------------------------------------

FOR APPELLANT: MARTIN VOGELBAUM, Assistant Federal Public Defender, *for* Marianne Mariano, Federal Public Defender, Buffalo, NY.

FOR APPELLEE: MONICA JEANETTE RICHARDS, Assistant United States Attorney (Tiffany H. Lee, Assistant United States Attorney, *on the brief*), *for* James P. Kennedy, United States Attorney for the Western District of New York, Buffalo, NY.

Appeal from a judgment of the United States District Court for the Western District of New York (Frank Paul Geraci, Jr., *Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED** in part and **DISMISSED** in part.

Defendant Quincey Frye appeals from a judgment of conviction following a jury trial for a single count of possessing a firearm and ammunition after conviction of a felony, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2), for which he was sentenced to 40 months' imprisonment, to be followed by three years of supervised release. On appeal, Frye contends that the district court (Geraci, *J.*) (1) erred in denying his motions to suppress the gun evidence and to reopen the

suppression hearing, (2) incorrectly permitted testimony regarding a recorded phone call, (3) failed to afford him a meaningful opportunity to challenge allegations regarding his purported gang affiliation, (4) erred in failing to instruct the jury that it was required to find that Frye knew he was a felon while in possession of the gun, and (5) erred in imposing a standard risk condition that improperly delegated judicial authority to the U.S. Probation Office. We assume the parties' familiarity with the underlying facts, procedural history of the case, and the issues on appeal, which we note only to the extent necessary to explain our decision.

## I. Frye's Motions to Suppress the Gun and Reopen the Suppression Hearing

Frye contends that the district court erred when it denied his motion to suppress the gun that was seized after Tiffany Granderson, with whom Frye had been staying while on parole, consented to parole officers' request to search her apartment. "In an appeal from a district court's ruling on a motion to suppress, we review legal conclusions de novo and findings of fact for clear error[,]" *United States v. Freeman*, 735 F.3d 92, 95 (2d Cir. 2013), giving "due weight to inferences drawn from those facts by resident judges and local law enforcement officers," *Ornelas v. United States*, 517 U.S. 690, 699 (1996). We review the district court's

denial of a motion to reopen a suppression hearing for abuse of discretion. *See United States v. Oliver*, 626 F.2d 254, 260 (2d Cir. 1980).

"[A] search authorized by consent is wholly valid" under the Fourth Amendment. *Schneckloth v. Bustamonte*, 412 U.S. 218, 222 (1973). "[W]hen a prosecutor seeks to rely upon consent to justify the lawfulness of a search, he has the burden of proving that the consent was, in fact, freely and voluntarily given." *Id.* (quoting *Bumper v. North Carolina*, 391 U.S. 543, 548 (1968)). Whether consent to a search "was in fact voluntary or was the product of duress or coercion, express or implied, is a question of fact to be determined from the totality of all the circumstances." *Id.* at 227 (internal quotation marks omitted). "Consent can be found from an individual's words, acts[,] or conduct." *Krause v. Penny*, 837 F.2d 595, 597 (2d Cir. 1988).

Frye argues that the officers' inability to recall the precise words used by Granderson prior to the search necessarily precluded a finding of voluntary consent. But numerous officers testified that, although Granderson initially stated that she could not give them permission to enter, she subsequently opened the door, stood to the side, and verbally indicated that they could enter the premises. As the district court noted, there was nothing in the record during the suppression

4

hearing to suggest that this consent was coerced, since the officers clearly announced their presence, explained the purpose of their visit, and refrained from using forceful language when communicating with Granderson. Because we must "pay special deference to the district court's factual determinations going to witness credibility," *United States v. Jiau*, 734 F.3d 147, 151 (2d Cir. 2013), Judge Geraci's finding that the officers' testimony was credible is entitled to substantial weight.

On appeal, Frye relies on Granderson's trial testimony to argue that her consent was not voluntary because the officers threatened to take her children away if she did not open the door. He also contends that the district court abused its discretion in denying Frye's post-trial motion to reopen the suppression hearing in light of this testimony. But the district court, recognizing that there was conflicting evidence at the suppression hearing – and having already heard and considered Granderson's trial testimony – reasonably concluded that reopening was not warranted. Again, we defer to the district court's conclusion that the officers' testimony was credible and supported by the record, and that Granderson's testimony did not alter this calculus.

Finally, Frye asserts that the search exceeded the scope of Granderson's

consent.  But Frye repeatedly disclaimed any such challenge before the district court.  In doing so, he waived his right to make this challenge on appeal.  *See United States v. Agrawal*, 726 F.3d 235, 259 (2d Cir. 2013) ("[A] strategic decision, evidenced not merely by silence but by a negative response on the record to a district court invitation to voice objection, does more than forfeit the unraised objection; it waives it.").

## II. Frye's Objection to Granderson's Testimony Regarding the Jail Phone Call

Frye next claims that the district court erred in permitting Granderson to testify that during a phone call, a recording of which was played to the jury, Frye admitted to owning the gun.  Under Rule 701, "[i]f a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is: (a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702."  Fed. R. Evid. 701.  We review a district court's evidentiary rulings for abuse of discretion, and will only reverse if there was "manifest error."  *United States v. Miller*, 626 F.3d 682, 687–88 (2d Cir. 2010).

Frye first argues that Granderson's testimony was not rationally based on

6

her perception, since she could not initially recall its contents in detail. But as we have stated previously, a "rational perception is one involving first-hand knowledge or observation," *United States v. Yannoti*, 541 F.3d 112, 125 (2d Cir. 2008) (internal quotation marks omitted), and Granderson was a participant in the phone call about which she was asked to testify. The fact that Granderson had to listen to the call to refresh her recollection as to certain details does not alter that conclusion. *Cf.* Fed. R. Evid. 612 (providing rules for using a writing to refresh a witness's recollection).

Frye likewise argues that Granderson's testimony was not helpful to the jury because it "didn't assist the jury in independently determining whether that fact existed." Frye Br. at 48. But as the district court noted, although the tape was audible, "the speakers were inarticulate," App'x 156, and Granderson was therefore able to help explain what they discussed. Moreover, the district court specifically instructed the jury that it was "entirely up to [it] to determine based upon [its] evaluation of the testimony . . . what was actually stated on those particular phone calls." App'x 529. Accordingly, it was not "manifest error" to allow Granderson to testify to the call's contents.

### III. Frye's Challenge to the Presentence Report's Allegations of Gang Involvement

Frye contends that the district court violated his due process rights by failing to comply with Federal Rule of Criminal Procedure 32, which provides that the district court "must – for any disputed portion of the presentence report or other controverted matter – rule on the dispute or determine that a ruling is unnecessary either because the matter will not affect sentencing, or because the court will not consider the matter in sentencing." Fed. R. Crim. P. 32(i)(3)(B). "The district court is required only to afford the defendant some opportunity to rebut the [g]overnment's allegations," *United States v. Massino*, 546 F.3d 123, 137 (2d Cir. 2008) (internal quotation marks omitted), and has discretion to determine the exact procedures for doing so, *see United States v. Berndt*, 127 F.3d 251, 257 (2d Cir. 1997).

During the sentencing proceeding, Frye objected to a statement in his presentence report ("PSR") indicating that he was a member of a certain gang. In response to Frye's objection, the district court ordered that the PSR be updated to reflect (1) the source of the information, (2) that the information merely indicated that Frye was associated in some way with a gang without necessarily being a member, and (3) that Frye objected to the inclusion of that information. Although Frye now insists that the district court's ruling was equivocal, since it failed to

conclusively resolve the question of his gang membership, there can be no doubt that Frye had adequate opportunity to contest the allegations in the PSR, as required by Rule 32. More importantly, the record as a whole makes clear that the district court placed no reliance on Frye's purported gang affiliation when imposing his sentence. To the contrary, the district court gave a lengthy recitation of the facts that informed its sentencing decision, including Frye's extensive criminal history, and at no point mentioned his alleged (and disputed) gang affiliation. Therefore, we find that the district court did not err in its resolution of the contested information in Frye's PSR.

## IV. Frye's Knowledge of His Prior Felony Conviction

Frye also insists – for the first time on appeal – that the district court erred by failing to instruct the jury that it was required to find that he knew he had a felony conviction when he possessed the gun. Specifically, Frye relies on the Supreme Court's decision in *Rehaif v. United States*, —— U.S. ——, 139 S. Ct. 2191 (2019) – decided after Frye's sentencing – which held that to obtain a conviction pursuant to 18 U.S.C. § 922(g), the government must prove not only that the defendant knew that he possessed a firearm, but also that he "knew he belonged to the relevant category of persons barred from possessing a firearm." 139 S. Ct.

9

at 2200. Accordingly, although Frye had stipulated at trial that he had previously been convicted of a crime punishable by imprisonment for a term exceeding one year, that stipulation failed to address his knowledge of the prior conviction or its potential penalties at the time he possessed the firearm. Because Frye challenges the district court's instruction for the first time on appeal, we review that instruction "for plain error, considering whether (1) there is an error; (2) the error is clear or obvious, rather than subject to reasonable dispute; (3) the error affected the appellant's substantial rights; and (4) the error seriously affects the fairness, integrity or public reputation of judicial proceedings." *United States v. Miller*, 954 F.3d 551, 557–58 (2d Cir. 2020) (internal quotation marks omitted).

Frye's argument is foreclosed by our decision in *Miller*. Like Frye, the defendant in *Miller* stipulated to his qualifying status, presumably to prevent the jury from learning potentially prejudicial facts concerning the defendant's prior conviction; indeed, as we noted in *Miller*, had the government sought to introduce evidence of the defendant's prior conviction, the district court likely would have excluded it "as unnecessary and prejudicial embellishment on his stipulation." *Id.* at 559. In light of the stipulation, we found that the district court did not commit plain error when instructing the jury that the government was not required to

prove that the defendant knew of his status as a felon, since the PSR showed that he was sentenced to, and actually served, more than one year in prison for a prior felony conviction. *Id.* at 559–60. Given those facts, we concluded that the error did not "seriously affect the fairness, integrity, or public reputation of judicial proceedings," since, "had the *Rehaif* issue been foreseen by the district court, [the defendant] would have stipulated to knowledge of his felon status to prevent the jury from hearing evidence of his actual sentence." *Id.* at 559–60.

The same is true here. Like the PSR in *Miller*, Frye's PSR shows that he was sentenced to, and served, more than one year's imprisonment for a felony conviction. Specifically, he pleaded guilty to attempted burglary, and was sentenced to three years' imprisonment, of which he served a little over two years. Moreover, Frye finished serving that sentence only about five months before the date on which he was found to be in possession of a gun. We thus conclude that the error here, as in *Miller*, was not plain, since it did not "seriously affect the fairness, integrity, or public reputation of judicial proceedings." *Id.* at 559.

## V.  Standard Risk Condition

Finally, Frye challenges one of the conditions of his supervised release, arguing that the district court's imposition of a third-party risk notification

condition impermissibly delegated judicial authority to his probation officer. In *United States v. Boles*, 914 F.3d 95 (2d Cir. 2019), we held that same risk condition was vague and impermissibly delegated power to the probation officer. After *Boles*, the District Court for the Western District of New York issued a standing order amending the Judgment and Commitment order in all criminal cases, replacing the problematic condition with the following:

> If the court determines in consultation with you[r] probation officer that, based on your criminal record, personal history and characteristics, and the nature and circumstances of your offense, you pose a risk of committing further crimes against another person (including an organization), the probation officer may require you to notify the person about the risk and you must comply with that instruction. The probation officer may contact the person and confirm that you have notified the person about the risk.

Gov. Br. at 35. Frye nevertheless argues that the new condition continues to improperly delegate authority to the probation officer, as it "differs from the one disapproved in *Boles* only in that it properly commits to the [d]istrict [c]ourt the authority to determine that a defendant represents a risk," but "continues to . . . grant[] Probation the authority to curb the defendant's liberty by deciding that he must notify third parties of the risk the [d]istrict [c]ourt has determined he poses." Frye Reply at 31.

In our recent decision in *United States v. Traficante*, 966 F.3d 99 (2d Cir. 2020),

12

we held that a defendant cannot challenge the amended condition as improper unless and until such a delegation occurs. As we explained in *Traficante*, "the supposed delegation is conditioned on the district court finding, during [the defendant's] term of supervised release, that he poses a risk of committing further crimes against another person" – an event that might never occur. *Id.* at 106–07. And even if the district court were to make such a risk determination, it "still might directly order [the defendant] to notify the at-risk individual, or alternatively, order the probation officer to require [the defendant] to so notify the potential victims," meaning that the "allegedly impermissible delegation would . . . never have materialized." *Id.* at 107. We therefore conclude that Frye's challenge to the standing order, as in *Traficante*, is not ripe.

We have considered the rest of Frye's arguments and conclude that they are without merit. Accordingly, we DISMISS Frye's challenge to the standard risk condition, but AFFIRM the judgment of the district court in all other respects.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

13